**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 5 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

EUGENE NICHOLSON, JR.,

    Defendant-Appellant.

No. 97-6114

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 96-CR-164)**

---

Submitted on the Briefs:[*]

Patrick M. Ryan, United States Attorney, and Timothy W. Ogilvie, Assistant United States Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

Irven R. Box of Box & Box, Oklahoma City, Oklahoma, for Defendant-Appellant.

---

Before **BALDOCK**, **McKAY**, and **KELLY**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Defendant Eugene Nicholson, Jr., was indicted on one count of possession with intent to distribute approximately five kilograms of cocaine, and one count of possession with intent to distribute approximately ten kilograms of marijuana, both in violation of 21 U.S.C. § 841(a)(1). Defendant filed a motion to suppress evidence of the drugs, which narcotics officers located in his baggage during a drug interdiction at the Oklahoma City Union Bus Terminal. According to Defendant, the evidence which the officers uncovered arose from a warrantless search of his baggage in violation of the Fourth Amendment's proscription against unreasonable searches. Following an evidentiary hearing, the district court denied Defendant's motion. Defendant subsequently entered a conditional plea of guilty pursuant to Fed. R. Crim. P. 11(a)(2), and the district court sentenced him to 115 months imprisonment. Defendant appeals the district court's denial of his motion to suppress. We exercise jurisdiction under 28 U.S.C. § 1291, and reverse.

I.

The facts are undisputed. During the mid-morning of September 26, 1996, Detectives Mark Wenthold, Tina Arragon, Bo Leach, and Miguel Ramos, all of the Oklahoma City Police Department's Drug Interdiction Unit, and all in street clothing, awaited the regularly-scheduled stop of a Greyhound bus en route from San Diego to New York City. The bus arrived at the Oklahoma City terminal around 9:30 a.m. After the passengers disembarked, Detectives Wenthold and Ramos, with the permission of

Greyhound officials, began to inspect the luggage contained in the bus' cargo hold. Meanwhile, Detectives Leach and Arragon began to inspect the bags in the overhead racks of the passenger compartment.

"[L]ooking over the luggage," Detective Wenthold spotted a black, padlocked suitcase, which he described as a fabric-sided bag able to stand on its own. Detective Wenthold testified that he "initially" felt the sides of the bag with his palms perpendicular to the ground and flat, and detected "several large bundles" inside it. He then smelled the bag and sensed a strong odor of marijuana coming from its interior. When asked whether the black suitcase was the only bag he handled in this manner, Detective Wenthold responded, "probably not." Detective Wenthold removed the bag from the cargo hold. The claim tag on the bag listed its destination as Toledo, Ohio. Detective Wenthold asked the bus driver to produce the passengers' tickets. A check of those tickets indicated that Defendant was the only passenger on the bus traveling to Toledo.

While Detective Wenthold and Ramos checked the bus' cargo hold, Detectives Leach and Arragon entered the passenger area of the bus and began removing bags from the overhead racks. Detective Leach testified that "[d]uring the course of removing the bags from the overhead racks, . . . they are manipulated and smelled . . . ." Detective Leach further testified that he felt hard, "tightly-wrapped bundles" inside an unidentified black carry-on bag, which led him to believe the bag might contain illegal drugs. Although Detective Leach testified that he generally smelled carry-on bags after

3

removing them from the overhead rack, he did not testify that he actually smelled Defendant's carry-on bag, or that his suspicions were aroused by the bag's scent. After manipulating the carry-on bag, Detective Leach placed it back in the overhead rack.

Shortly thereafter, the detectives allowed the passengers to reboard the bus. Once the passengers were seated, Detectives Wenthold and Leach checked each of their tickets, and asked them to claim any carry-on baggage. Defendant sat directly beneath the black carry-on bag. Detective Leach identified Defendant, and specifically asked him if he had any carry-on bags in the overhead rack or luggage in the cargo hold. Defendant responded that he did not.

After Detectives Wenthold and Leach had checked the identity of each passenger, the black carry-on bag remained unclaimed. Detective Leach retrieved the bag from the overhead rack, held it above his head, and asked if anyone on the bus owned the bag. No one responded. Detective Wenthold next brought the black suitcase from the cargo hold onto the bus and made the same inquiry. Again, no one responded. The detectives then removed both bags from the bus to inspect their contents. Outside the bus, the detectives opened both bags. Inside the black carry-on bag, the detectives found five gray duct-taped bundles each containing approximately one kilogram of cocaine. The bag also contained items of extra-large clothing which appeared to fit Defendant. Inside the black suitcase, the detectives found approximately ten kilograms of marijuana consisting of seven bricks, each tightly wrapped in cellophane.

4

Detective Wenthold asked Defendant to step off the bus. Upon questioning, Defendant repeatedly placed his hands in his coat pockets. When Detective Leach asked if he was carrying any weapons, Defendant responded no, and consented to a pat down search of his person. In Defendant's coat pocket, Detective Leach located several toiletry items and a torn claim check with a number that matched the number on the black suitcase's claim tag. Detective Leach placed Defendant under arrest.

At the suppression hearing, Defendant stipulated to his ownership of the bags to establish his standing to contest the detectives' actions. See Simmons v. United States, 390 U.S. 377, 389-94 (1968). Detectives Wenthold and Leach were the only witnesses to testify at the evidentiary hearing. Based upon the detectives' undisputed testimony, the district court found that Defendant "did not have a legitimate expectation of privacy in the carry-on bag." The court also found that Defendant "had no reasonable expectation of privacy in the air surrounding the suitcase contained in the cargo compartment." The court did not address the specific manner in which the detectives handled Defendant's bags, or the fact that Detective Wenthold felt the bundles in the suitcase before he sniffed it. Although its order does not expressly say so, the court apparently reasoned that because Defendant lacked any reasonable expectation of privacy in the exterior of his bags, the detectives' initial actions in handling them did not constitute a search within the meaning of the Fourth Amendment. Thus, the district court first concluded that the detectives lawfully seized both bags, which they suspected contained illegal drugs. The

court next concluded that because Defendant abandoned his bags by denying ownership of them, the subsequent search of the bags without a warrant did not violate the Fourth Amendment. Finally, the court concluded that Defendant voluntarily consented to the search of his person, which revealed the claim check.

## II.

The Fourth Amendment protects the "right of the people to be secure in their . . . effects, against unreasonable searches." U.S. Const. amend. IV (emphasis added). See United States v. Jacobsen, 466 U.S. 109, 114 (1984) (warrantless searches of sealed packages are presumptively unreasonable). Where the facts are undisputed, we review de novo the question of whether a search has occurred within the meaning of the Fourth Amendment. See United States v. Gault, 92 F.3d 990, 991 (10th Cir.), cert. denied, 117 S. Ct. 321 (1996). A search for purposes of the Fourth Amendment occurs when government officials violate an individual's legitimate expectation of privacy. In Smith v. Maryland, 442 U.S. 735, 740 (1979), the Supreme Court explained:

> [T]his Court uniformly has held that the application of the Fourth Amendment depends on whether the person invoking its protection can claim a "justifiable," a "reasonable," or a "legitimate expectation of privacy" that has been invaded by government action. This inquiry . . . normally embraces two discrete questions. The first is whether the individual, by his conduct, has exhibited an actual (subjective) expectation of privacy,--whether . . . the individual has shown that he seeks to preserve something as private. The second question is whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable,--whether . . . the individual's expectation, viewed objectively, is justifiable under the circumstances.

6

(internal quotations, citations, and brackets omitted). When a defendant moves to suppress evidence obtained as a result of an allegedly unconstitutional search, he has the burden of demonstrating a subjective expectation of privacy that society is prepared to recognize as reasonable. United States v. Conway, 73 F.3d 975, 979 (10th Cir. 1995).

Travelers have a legitimate expectation of privacy in their personal luggage, which the Fourth Amendment protects. See United States v. Chadwick, 433 U.S. 1, 13 (1977) (individual has expectation of privacy in luggage as repository of "personal effects"), overruled in part on other grounds, California v. Acevedo, 500 U.S. 565 (1991). That expectation of privacy, however, is not unlimited. See United States v. Ross, 456 U.S. 798, 822-23 (1982) (protection which Fourth Amendment affords luggage varies in different settings). Not every investigative technique which reveals something about the contents of a traveler's luggage constitutes a search within the meaning of the Fourth Amendment. For example, a visual inspection of that which is in plain view does not constitute a search. See Arizona v. Hicks, 480 U.S. 321, 328 (1987). A field test which reveals nothing more than whether a substance is cocaine does not constitute a search. See Jacobsen, 466 U.S. at 122-24. A dog sniff, which "is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure," is not a search. United States v. Place, 462 U.S. 696, 707 (1983). Nor does a search occur where officials detect the odor of illegal drugs by using their own sense of smell. See United States v. Burns, 624 F.2d 95, 101 (10th Cir. 1980). Official actions,

7

such as sniffs and field tests, which reveal <u>only</u> whether an illegal substance may be present and little else, compromise no legitimate expectation of privacy.

Every search necessarily involves the use of sensory perception, i.e., touch, taste, smell, sight, or sound, but as case law teaches us, the use of sensory perception does not necessarily constitute a search. Logically then, as with sight and smell, not every manner of touch constitutes a search under the Fourth Amendment. Thus, in <u>United States v. Gault</u>, 92 F.3d 990 (10th Cir. 1996), we held that an officer's kicking and lifting of a gym bag located on the floor in front of a train seat, and protruding into the aisle, did not constitute a search. We reasoned that the information the officer "obtained from the kick and lift of the bag, its weight and the solidity of its contents, was the same information that a passenger would have obtained by kicking the bag accidentally or by lifting it to clear the aisle." <u>Id.</u> at 992. In other words, the officer's manner of handling the bag was the sort that a traveler leaving the bag in such a position reasonably might expect. Any subjective expectation that the bag would not be so handled given its location was not objectively reasonable. <u>See</u> <u>Jacobsen</u>, 466 U.S. at 113 ("A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.").

The D.C. Circuit employed an analysis similar to <u>Gault</u> in <u>United States v. Most</u>, 876 F.2d 191 (D.C. Cir. 1989). In that case, however, the court reached a different conclusion because the officer's manner of handling defendant's bag was not the sort which he might reasonably have expected. In <u>Most</u>, an officer suspected that a shopping

8

bag which defendant had checked with the store clerk might contain illegal drugs.  The officer felt the bottom of the bag, employing what he referred to as the "crush technique."  Through the bag, he could feel hard, individually wrapped packages inside, which he believed to be crack cocaine.  Upon opening the bag, the officer discovered several grams of crack cocaine.  The court held that the officer had conducted a search of defendant's bag.  The court reasoned:

> [The officer's] feeling of the bag went beyond the sort of highly limited contact that would be necessary if the bag were moved . . . .  The bag had a drawstring and could easily be transported without physical manipulation of the bag itself . . . .  Although Most might reasonably have expected that his bag would be moved, he had no reason to expect that it would be touched <u>in the way that the police officer subsequently touched it</u>.

<u>Id</u>. at 198 n.13 (emphasis in original).

The circuits uniformly agree that an officer's touching of a bag's exterior does not necessarily constitute a search.  In <u>United States v. Guzman</u>, 75 F.3d 1090, 1095 (6th Cir.), <u>cert. denied</u>, 117 S. Ct. 266 (1996), the Sixth Circuit held, without any apparent limitation, that a commercial bus travelers's expectation of privacy does not extend to the exterior of luggage placed in an overhead compartment.[1]  In <u>Guzman</u>, however, the

---

[1]  The court in <u>Guzman</u> relied largely on the Eighth Circuit's two-to-one decision in <u>United States v. Harvey</u>, 961 F.2d 1361 (8th Cir. 1992) (per curiam), to conclude that a "passenger on a common carrier has no reasonable expectation of privacy in the exterior of his luggage."  <u>Guzman</u>, 75 F.3d at 1093.  In <u>Harvey</u>, however, the court concluded that officers "had reasonable suspicion to conclude that narcotics were located somewhere in the overhead compartment" after a trained dog alerted on the compartment.  961 F.2d at 1364.

officer merely "placed his hand on . . . [the bag] and asked to whom it belonged. . . . [The officer] testified that, when he touched the bag, he felt several hard bricks inside and immediately thought the bricks were drugs." Id. at 1092. See also United States v. Gant, 112 F.3d 239, 241 (6th Cir. 1997) (relying on Guzman to conclude that an officer's removal of a bag from the overhead rack to the seating area in preparation for a dog sniff did not constitute a search).

Other circuits have been more cautious in their language, suggesting, as do Gault and Most, that the degree of intrusion is the determining factor in whether an officer's contact with the exterior of luggage constitutes a search under the Fourth Amendment. In United States v. Lovell, 849 F.2d 910, 915 (5th Cir. 1988), the Fifth Circuit concluded that defendant had "no reasonable expectation that his luggage would not be moved or handled." In Lovell, officers suspected that defendant, an airline passenger, was smuggling drugs. The officers removed defendant's two suitcases from the airline's conveyor belt, and noticed their contents were solid and quite heavy. When the officers pressed the sides of the bags, they detected the odor of marijuana. In holding that the officers' actions did not constitute a search, the court stated: "While we could hypothesize a 'prepping' process so violent, extreme and unreasonable in its execution as to cross the bounds of constitutional propriety, we are not confronted by such a process here." Id. See also United States v. Viera, 644 F.2d 509, 510-11 (5th Cir., Unit B 1981) ("light press" of the hands along the outside of a bag to circulate air in preparation for a

10

dog sniff does not constitute a search).

In United States v. McDonald, 100 F.3d 1320 (7th Cir. 1996), cert. denied, 117 S. Ct. 2423 (1997), the Seventh Circuit addressed the question of whether a police officer's "pushing and feeling" of bags in the overhead racks of a commercial bus without actually removing the bags from the racks constituted a search within the meaning of the Fourth Amendment.  Notably, in McDonald, the court thrice repeated that the officer did not remove defendant's bag from the overhead rack during his initial contact with it.  Id. at 1322, 1323 n.3, & 1326.  In a two-to-one decision, the court held that "the reasonable expectation of privacy inherent in the contents of luggage is not compromised by a police officer's physical touching of the exterior of luggage left exposed in the overhead rack of a bus."  Id. at 1325 (emphasis in original).  Because defendant did not have a reasonable expectation of privacy that the exterior of her luggage "would not be felt, handled, or manipulated by others," the officer's actions did not constitute a search.  The court reasoned that "the feeling and pressing of McDonald's bags that the police officers undertook . . . was nothing more than McDonald might expect from others, bus employees as well as passengers on the bus, moving luggage to adjust, remove, or make room for their baggage."  Id. at 1326.

In a vigorous dissent, Circuit Judge Ripple acknowledged that an officer's "mere touch" of a bag in an overhead rack does not constitute a search, because passengers assume the risk that their bags might be subjected to the minimal sort of moving that

11

occurs when other passengers seek to place their bags in the same rack. Id. at 1331-32 (Ripple, J., dissenting). The dissent emphasized, however, that intrusions into the privacy of another are a matter of degree. Id. at 1332 (citing Minnesota v. Dickerson, 508 U.S. 366 (1993)). The dissent described the officer's actions in McDonald as beyond the "sort of occasional touching that a person expects hand luggage to endure in an overhead rack." Rather, the officer's actions amounted to a "tactile inspection by an expert examiner aimed at discovering the nature of the contents of the bag." Id. at 1333.[2]

### III.

With this background in mind, the question we must answer in this case is whether the detectives' initial manner of handling Defendant's checked suitcase and carry-on bag constituted a search under the Fourth Amendment. If the detectives' actions constituted a search, then the search, absent a warrant, was necessarily unreasonable. The Supreme Court has repeatedly observed that warrantless searches are per se unreasonable under the Fourth Amendment, subject only to a few, well-established exceptions, see Thompson v. Louisiana, 469 U.S. 17, 19-20 (1984) (per curiam), none of which the Government asserts, and none of which appear to apply in this case.

When the bus arrived at the terminal, the detectives did not have probable cause to

---

[2] Judge Ripple aptly concluded his dissent with the statement: "No federal judge traveling by bus or rail would expect, or permit, a fellow passenger to rub, squeeze or manipulate his or her hand baggage in a concerted attempt to determine its contents. We should protect for others the privacy that we would demand for ourselves." McDonald, 100 F.3d at 1334 (Ripple, J., dissenting).

12

believe that illegal drugs were on the bus. Nor did they have articulable suspicion to suspect the presence of illegal drugs. The detectives knew only that the west coast is a source area for illegal drugs. The detectives did not have the passengers' permission to examine their luggage.[3] Bus officials did not notify the passengers that their luggage was subject to inspection. What occurred here, plain and simple, was a suspicionless police sweep of a bus in interstate travel.

A.

Detective Leach testified that he removed Defendant's carry-on bag from the overhead rack and "manipulated" it. As a result, Detective Leach detected "tightly wrapped bundles" inside the bag, which he believed to be illegal drugs. He testified: "[T]here is a distinct feel to hard taped bundles inside of a soft-sided carry-on bag. It's not something that you experience in a large number of people's bags that are traveling." Relying on the Seventh Circuit's decision in McDonald, 100 F.3d at 1324-27, the district court concluded that Defendant had no reasonable expectation of privacy in the exterior of his bag, and thus, Detective Leach's initial handling of Defendant's carry-on bag did

---

[3] While the detectives obtained the permission of bus officials to board and inspect the bus, the Government does not contend that, and we do not address whether, those officials could validly consent to the detectives' search of Defendant's luggage. See Illinois v. Rodriquez, 497 U.S. 177, 188 (1990) (third party's consent to search valid if "the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority."); United States v. Matlock, 415 U.S. 164, 171 n.7 (1974) (consent of third party having "common authority" over property to be inspected may justify warrantless search).

13

not constitute a search within the meaning of the Fourth Amendment.

We believe the district court's holding with respect to the initial handling of Defendant's carry-on bag sweeps too broadly. The degree of intrusion is the determining factor as to whether an officer's contact with the exterior of luggage constitutes a search under the Fourth Amendment. To be sure, placing a bag in an overhead rack of a commercial bus exposes it to certain intrusions. Seeking to make room for their own articles, other passengers may push and move the bag. Therefore, Defendant had no reasonable expectation that his carry-on would not be touched in this manner. This does not mean, however, that Detective Leach was free to manipulate Defendant's carry-on bag in any manner so long as he did not open the bag and reveal its contents to the eye. By manipulating Defendant's bag in a manner that Defendant did not reasonably expect from other passengers, Detective Leach conducted a search within the meaning of the Fourth Amendment. Compare Gault, 92 F.3d at 992.

We therefore part with the Seventh Circuit's conclusion in McDonald that a passenger on a commercial bus has no reasonable expectation that a carry-on bag in an overhead rack will not be "manipulated by others." 100 F.3d at 1326. Webster's defines "manipulate" as "to treat, work, or operate with the hands." Webster's Third New Int'l Dictionary, 1376 (1981). Detective Leach was not prepping the bag for a sniff. He never testified that he smelled Defendant's bag. Instead, Detective Leach worked Defendant's bag to determine whether it contained something of independent evidentiary value.

14

Unlike a sniff, manipulating a bag with the hands may reveal much more than simply the likely presence of illegal drugs. To an extent, it reveals the contents of a bag, for example clothes, shoes, or toiletries, in which the owner has a legitimate expectation of privacy.

We believe that by handling Defendant's carry-on bag in this manner, Detective Leach departed from the type of handling a commercial bus passenger would reasonably expect his baggage to be subjected, and entered the domain protected by the Fourth Amendment. When Detective Leach removed Defendant's carry-on bag from the overhead rack and conducted a "tactile examination . . . aimed at discovering the nature of the contents of the bag," McDonald, 100 F.3d at 1333 (Ripple, J., dissenting), he violated Defendant's reasonable expectation of privacy in the bag. Thus, Detective Leach's manner of handling Defendant's carry-on bag constituted a search within the meaning of the Fourth Amendment. Cf. Minnesota v. Dickerson, 508 U.S. 366, 378 (1993) (during a pat down search of defendant for weapons, officer's "squeezing, sliding and otherwise manipulating" the contents of defendant's pocket held unconstitutional).

B.

Next we address whether Detective Wenthold's manner of handling Defendant's checked suitcase in the cargo hold of the bus constituted a search. Detective Wenthold testified that he initially examined Defendant's black suitcase in the cargo hold by feeling its sides with his hands perpendicular to the ground and flat. Apparently pressing on the sides of the standing suitcase, Detective Wenthold detected "several large bundles" inside

15

it. Detective Wenthold then smelled the suitcase and sensed the odor of marijuana. Based on these facts, the district court concluded that Defendant had no reasonable expectation of privacy in the air surrounding his suitcase, see Gault, 92 F.3d at 992, and thus, Detective Wenthold did not perform a search when he smelled the suitcase.

Detective Wenthold smelled the suitcase, however, only after he felt its exterior with the palms of his hands, detected the bundles, and became suspicious. This case is unlike the Fifth Circuit's decisions in Lovell and Viera, where officers gently pressed on the sides of the bags in order to circulate the air in preparation for a sniff, human or dog. In those cases, unlike here, the officers' initial handling of the bags revealed nothing of independent evidentiary value and thus was considered minimally intrusive. Like Detective Leach's handling of the carry-on bag, Detective Wenthold was not simply prepping the suitcase so that he or a dog could sniff it. No dog was present at the scene. Rather, by pressing on the sides of the suitcase, Detective Wenthold acknowledged that he was inspecting the contents of the suitcase. Detective Wenthold testified on direct examination: "[I]t didn't feel like there was any type of clothing or personal articles inside. It just felt like hard bundles." On cross examination, he reiterated: "Instead of feeling like someone's clothing or shoes, it felt like several large bundles packed inside there, really hard bundles."

By checking his suitcase with the bus line, Defendant could reasonably expect that it would be lifted by the handle and moved, even tossed, on its way to and from the cargo

16

hold. But we believe Detective Wenthold's pressing on the sides of the suitcase with the palms of his hands in order to inspect its contents violated Defendant's reasonable expectation of privacy in the suitcase because it went beyond that type of contact which a passenger may reasonably expect when checking a bag with a commercial bus line. See United States v. Garcia, 42 F.3d 604, 606 (10th Cir. 1994) (passenger retains an expectation of privacy in the contents of checked luggage). Accordingly, we conclude that Detective Wenthold's initial manner of handling Defendant's suitcase in the cargo hold also constituted a search within the meaning of the Fourth Amendment.

IV.

Because we conclude that the detectives' initial manner of handling Defendant's luggage constituted an unreasonable search, the fruits of that search must be suppressed. Despite the Government's assertions to the contrary, we may not justify the detectives' subsequent opening of Defendant's luggage on the basis that Defendant subsequently abandoned his luggage by failing to claim ownership. Abandonment must be voluntary. Because any abandonment was a direct consequence of the detectives' Fourth Amendment violation in initially handling Defendant's luggage without a warrant, we deem such abandonment involuntary as a matter of law. See United States v. Garzon, 119 F.3d 1446, 1451 (10th Cir. 1997).[4]

---

[4] Nor may we justify the detectives' actions, as the Government argues, based on the "plain touch" doctrine. See Minnesota v. Dickerson, 508 U.S. 366, 374-77 (1993).
(continued...)

17

This case presents yet another variation on the line-drawing that has become commonplace when we address the contours of Fourth Amendment rights. As we noted nearly two decades ago in United States v. Rengifo-Castro, 620 F.2d 230, 232 (10th Cir. 1980) (per curiam): "An apparently small difference in the factual situation frequently is viewed as a controlling difference in determining Fourth Amendment rights." While this observation may be disconcerting, "there is nothing new in the realization that the Constitution sometimes insulates the criminality of a few in order to protect the privacy of us all." Arizona v. Hicks, 480 U.S. 321, 329 (1987).

REVERSED and REMANDED.

---

[4](...continued)
Application of the "plain touch" doctrine is proper only if the initial contact is lawful. Id. at 375 (doctrine applies in cases where "an officer discovers contraband through the sense of touch during an otherwise lawful search").