BOGUE, District Judge,
dissenting.
The majority avoids ruling on whether the manipulation of Liu’s bag amounted to a warrantless search. The majority does so based on its conclusion , that an investigating officer viewing this series of events would believe that Liu intended to abandon his property, and that the District Court’s opposite conclusion was “unsupported by substantial evidence.” United States v. Tugwell, 125 F.3d 600, 602 (8th Cir.1997) (citations omitted), cert. denied, — U.S. —, 118 S.Ct. 721, 139 L.Ed.2d 661 (1998). The majority relies on Washington for the proposition that a voluntary abandonment of one’s property can render one ineligible to complain about an earlier purported search. See United States v. Washington, 146 F.3d 536 (8th Cir.1998). Based on this holding, the majority defers any analysis of the legality of the initial encounter in which Detective Barrios lifted Liu’s bag, felt it, removed it from the overhead compartment, placed it on the seat beside Liu, felt it again, and then placed it on the aisle floor.
Evidence seized as a direct product of a Fourth Amendment violation must be suppressed. Wong Sun v. United States, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963). The “fruit of the poisonous” tree doctrine, however, is not an absolute one, for if the evidence in question is sufficiently attenuated from the primary taint of the illegal search, the evidence may still be admissible. Taylor v. Alabama, 457 U.S. 687, 691, 102 S.Ct. 2664, 2667, 73 L.Ed.2d 314 (1982). An intervening act, for example, may sufficiently disconnect the taint (illegality) from the fruit (evidence). See, e.g., United States v. Nooks, 446 F.2d 1283, 1288 (5th Cir.1971) (disregarding the illegality of the defendant’s initial arrest when he subsequently fled at 115 m.p.h. and fired three shots directly at the sheriff, justifying a search of his automobile’s trunk which revealed a box of money and two co-defendants), cert. denied, 404 U.S. 945, 92 S.Ct. 299, 30 L.Ed.2d 261 (1971).
Abandonment may in some cases qualify as such an intervening act. In Washington, when the defendant expressly denied ownership of his luggage, he “made a voluntary decision of his own free will: He had not been informed that he was a target, nor did the officers seize him prior to his first denial of ownership of the bag.” Washington, 146 F.3d at 538. Once Mr. Washington’s property was abandoned, the subsequent search/seizure of it impinged no privacy interest. Id. at 537, citing United States v. Sanders, 130 F.3d 1316, 1317-18 (8th Cir.1997); see also Tugwell, 125 F.3d at 602. Because Mr. Washington’s unequivocal abandonment was unrelated to the officer’s previous manipulation of his bag, this Court had no occasion to analyze its “grave doubts about the constitutional propriety” about the warrantless *963 manipulation of the bag. Washington, 146 F.3d at 637.
The degree of Wong Sun attenuation between the evidence and challenged government action turns on several factors, including the temporal distance between the taint and the fruit, an intervening event (such as the independent act of abandonment in Washington) which dissipates or purges the taint, and the seriousness of the fourth amendment violation. Dunaway v. New York, 442 U.S. 200, 219, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1979); United States v. Ceccolini, 435 U.S. 268, 274-75, 98 S.Ct. 1054, 1059, 55 L.Ed.2d 268 (1978); Brown v. Illinois, 422 U.S. 590, 604-05 95 S.Ct. 2254, 2261-62, 45 L.Ed.2d 416 (1975); United States v. McGill, 125 F.3d 642, 644 (8th Cir.1997); see also Josephine R. Potuto, “A Practitioner’s Primer to the Fourth Amendment,” 70 Neb. L.Rev. 412, 441 (1991). The Supreme Court has declared that “particularly, the purpose and flagraney of the official misconduct” is to be considered in a court’s inquiry into the causal connection between the evidence and the challenged search. Dunaway, 442 U.S. at 218, 99 S.Ct. at 2259 (considering the connection between an illegal arrest and subsequent confession), quoting Brown, 422 U.S. at 605, 95 S.Ct. at 2262 (emphasis supplied).[4] Here, this was not done.
In the present case, Liu left his seat, ostensibly to meet a female acquaintance on the railway platform, and a Kansas City Police Officer followed close on his heels, badgering him with questions. These questions were undoubtedly triggered by suspicions about the possible contents of Liu’s bag, suspicions directly linked to the challenged government action of touching his bag to discern its contents.[5] As Liu disembarked and looked around, he explained to Officer Wilson that he was looking for a woman.[6] Officer Wilson doggedly followed close behind. When plainclothes Officer Quinlan, who did not identify himself as a police officer, moved to intercept Liu, Liu attempted to run but was immediately grabbed, handcuffed, and “seized” for purposes of the Fourth Amendment.
Clearly, Liu’s actions, whether or not they must be read as communicating an objective intent to abandon his bag back on the train, were not the same “voluntary decision of ... free will” as that of Mr. Washington’s uncoerced verbal relinquishment. Washington, 146 F.3d at 538. Moreover, the circumstances giving rise to Liu’s “abandonment” were not unconnect *964 ed from the challenged search. Thus, more analysis is required into whether the initial manipulation of Liu’s bag was “sufficiently attenuated” from his actions which the Court today construes as effecting an abandonment.
Part of this inquiry should require an examination of the “flagrancy of the official misconduct.” Dunaway, supra. Instead, the majority avoids weighing the “flagrancy” — along with the potential illegality — of the manipulation of Liu’s bag, and shoehorns the Magistrate’s unchallenged findings into the approach taken in Washington, where the defendant freely abandoned his property in circumstances unrelated to the challenged manipulation. Washington turned on its own facts, it did not establish a talismanic rule that an illegal search is retroactively “cured” whenever the defendant subsequently panics and abandons his or her property.[7]
I dissent in order to raise a serious question about the majority’s failure to adequately assess whether we can in fact detour around the challenged search and the related question of whether there is a reasonable expectation of privacy that luggage placed directly overhead on a public train will not be touched, pressed, felt, and removed in the manner in which it occurred here. In my view, we should carefully assess the degree of connection between the challenged search and the act of abandonment. Given the proximity and relatedness between the two in this case, it becomes necessary to examine the legality of the officer’s touching and feeling of the defendant’s bag. Because this bears on whether we can bypass the search issue altogether, it is a critical piece of the puzzle. In order to resolve whether Liu’s subsequent act of abandonment was an intervening circumstance which insulates the state’s manipulation of his bag from Fourth Amendment attack, we should first assess the legality (and “flagrancy”) of that manipulation. Omitting this inquiry places the proverbial cart before the proverbial horse.
Under the facts of this case, I would follow this suggested analysis down the following path. First, I would conduct a reasonable expectation of privacy inquiry and conclude that Detective Barrios’s manipulation of Liu’s bag was clearly unconstitutional. See United States v. Nicholson, 144 F.3d 632, 639 (10th Cir.1998); United States v. Most, 876 F.2d 191, 195 (D.C.Cir.1989); compare United States v. Gault, 92 F.3d 990, 992 (10th Cir.1996) (concluding that officer’s kicking and lifting of a bag left protruding five inches into the aisle on a train did not constitute a search). Next, even assuming that Liu’s subsequent actions clearly evidenced an abandonment, I would conclude that such acts, arising from a flagrant violation of the Fourth Amendment, cannot be construed as voluntary acts of will that independently legitimized the search. See Washington, 146 F.3d at 537. Therefore, I would affirm the District Court’s order suppressing the illegally obtained evidence and statements, and for this reason, I respectfully dissent.

. The "attenuation inquiry” is employed in cases where the defendant consents to a search following an illegal arrest, and it also applies to cases of abandonment following an illegal search or seizure. See, e.g., United States v. King, 990 F.2d 1552, 1563-65 (10th Cir.1993); United States v. Berd, 634 F.2d 979, 986-87 (5th Cir.1981). King also notes that review of this inquiry is for clear error. King, 990 F.2d at 1564.

. Cf. Wong Sun, 371 U.S. at 488, 83 S.Ct. at 417 (phrasing the question as whether the evidence was " ‘come at by exploitation of that illegality' ”) (citation omitted).

. It is unclear from the record whether the destination point of Liu’s train ticket (assuming he had one) was the station where he got off the train. Obviously, if Liu disembarked at his journey’s endpoint, his decision to leave his bag behind points toward an intent to abandon. If his train ticket gave him passage to a further point, on the other hand, his hurried pace could be more objectively perceived as a rush to find the woman before the train re-boarded. The fact that this evidence is not in the record, in my opinion, does not allow us to pay any less deference to the Magistrate’s findings.
I am especially troubled by the majority’s rejection as irrelevant the fact that Liu stated that he was disembarking to meet with someone. When Liu began to walk away from the officers, they might have believed that he was trying to escape from an uncomfortable encounter with law enforcement and abandon his bag to their scrutiny. The reasonableness of this belief would have been eroded to some extent when Liu explained that his intent was otherwise. Criminal minds will often concoct excuses which officers may reasonably find unbelievable, but this fact also underscores the deference due to a trial court's credibility assessments which are essentially beyond the scope this Court's review on appeal.

. Washington relied on United States v. McGill, 125 F.3d 642 (8th Cir.1997), cert. denied, - U.S. -, 118 S.Ct. 1108, 140 L.Ed.2d 161 (1998) and United States v. Thomas, 83 F.3d 259 (8th Cir.1996), neither of which assist us in the present case. Both involved consent to a search which was determined "sufficiently an act of free will to render the search valid.” Washington, 146 F.3d at 538. Neither case involved an abandonment arising out of a challenged search. Consent and abandonment are similar, but not identical issues.