# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1155

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Ernest E. Gwinn, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  May 11, 1999

Filed:   September 15, 1999

_____

Before WOLLMAN, Chief Judge, BEAM, and MURPHY, Circuit Judges.

_____

BEAM, Circuit Judge.

The United States appeals from an order of the district court[1] adopting the report and recommendation of the magistrate judge granting Gwinn's motion to suppress evidence and statements as unlawfully obtained.  We affirm.

_____

[1] The Honorable Fernando J. Gaitan, United States District Judge, Western District of Missouri, adopting the Report and Recommendation of United States Magistrate Judge Sarah W. Hays.

## I.    BACKGROUND

On the morning of September 27, 1998, drug interdiction detectives Robert Delameter and Larry Ealy of the Kansas City, Missouri, Police Department, dressed in plain clothes, boarded the "Southwest Chief," an Amtrak train en route from Los Angeles to Chicago, during its regularly scheduled stop in Kansas City. They were assigned to look for narcotics on the train's coach section. Delameter testified that the train frequently transported narcotics from the Southwest to the Midwest and that he had interdicted drugs on that train on numerous occasions in the past.

On board, the passengers' luggage was stored in open overhead racks located above the seat rows. As Delameter made his way through one of the coach cars, he spotted a soft-sided black Nike bag next to a gray bag in the overhead compartment. The black bag had no name tag or other identification.[2] To obtain a better look, Delameter stepped up on the back of a foot rest and the arm rest of one of the seats. He reached up, lifted the black bag, and felt its sides. As he did so, Delameter felt what he thought were bundles of narcotics. Delameter then pushed on the sides of the bag to expel air from inside, at which time he smelled the odor of marijuana. He then slid the bag back in its original location.

Delameter and Ealy then waited at the rear of the car while passengers reboarded to see if anyone would pick up the bag or in some way claim it. When no one did so, they decided to move the bag to see if anyone would claim ownership. With Ealy remaining at the rear of the car, Delameter picked up the bag and took a few steps with it, whereupon he heard someone say, "Hey, that's my bag." As Delameter turned

---

[2]Delameter testified that in performing interdiction duties, he had been trained to look for people with new luggage, over-stuffed luggage, heavy luggage, luggage with no name tags, people who are very possessive of their luggage, and people acting in a suspicious manner.

around with the bag in his arms, he saw Gwinn stand up. Gwinn again stated, "That's my bag." Delameter asked him, "This is your bag?" Gwinn replied, "Yes, that's my bag." Delameter then walked towards Gwinn, handed him the bag, and identified himself as a police officer. Delameter testified that Gwinn looked frightened and shocked, and began eyeing the stairs leading to the lower portion of the car. Thinking that Gwinn might attempt to flee, Delameter motioned to Ealy, who came up behind Gwinn, grabbed his arms, and handcuffed him. The bag fell onto a seat. Delameter then asked Gwinn if he had any other luggage. Gwinn answered that the gray bag belonged to him. Delameter then asked Gwinn if those were the only two bags he had. Gwinn responded that he had only one bag, the gray bag. Delameter testified that he twice asked Gwinn again if the black bag was his, and Gwinn denied ownership of it each time.

Detective Ealy took Gwinn and the black bag off the train and onto the platform area where a police dog sniffed the bag for drugs. The dog alerted to the bag. Gwinn was then taken to the conference room at the Amtrak station, where he was advised of his Miranda rights. He refused to make any statements. Delameter then opened the bag and searched it. He found three bundles of marijuana and a bundle of cocaine. Gwinn was charged with knowingly and intentionally possessing with intent to distribute cocaine, in an amount of 500 grams or more, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). Gwinn filed a motion to suppress evidence and testimony relating to such evidence as unlawfully obtained in violation of his Fourth and Fourteenth Amendment rights to be free from unreasonable searches.

After a hearing, the magistrate judge recommended suppression of the evidence, concluding that Delameter's manipulation of the black bag, as well as the subsequent detention of the bag for the dog sniff, violated Gwinn's Fourth Amendment rights. The magistrate judge rejected the government's contention that Gwinn had no standing to challenge the search because he had abandoned the bag. The district court adopted the

report and recommendation and granted Gwinn's motion to suppress. The government appeals.

## II.    DISCUSSION

Gwinn argues that Delameter's manipulation of the exterior of his bag while in the overhead compartment constitutes a search within the meaning of the Fourth Amendment and that the search was unlawful because it was conducted without a warrant, consent, probable cause, or even reasonable suspicion. The government claims that feeling the exterior of Gwinn's bag is not a search for Fourth Amendment purposes because passengers have no reasonable expectation that bags placed in an overhead compartment will not be subject to such touching. Alternatively, the government argues that Gwinn lacks standing to assert any Fourth Amendment violation because he voluntarily abandoned the bag when he twice denied its ownership.

We first address the government's claim that Gwinn voluntarily abandoned his bag by twice denying that he owned it. When a person voluntarily abandons property, he forfeits any expectation of privacy that he might otherwise have had in it. See United States v. Washington, 146 F.3d 536, 537 (8th Cir. 1998). In Washington, a case involving the search of a bag in the overhead compartment of a bus, we held that Washington's abandonment of the bag was a voluntary decision of his own free will when the evidence showed "[Washington] had not been informed that he was a target, *nor did the officers seize him prior to his first denial of ownership of the bag*." Id. at 538 (emphasis added). Also in United States v. Liu, 180 F.3d 957 (8th Cir. 1999), a recent decision involving a similar search by the same Kansas City drug interdiction unit, we held that the defendant's abandonment of his bag was voluntary when he was not seized by the officers until he began to run and had already left the bag behind on the train. See id. at 961. Here, Gwinn denied that he owned the black bag only after

he had been seized and handcuffed by the officers. Given this scenario, Gwinn's actions can hardly be characterized as a voluntary act.

Because we find Gwinn's abandonment of the black bag was not voluntary, we must address the constitutionality of Delameter's manipulation of the bag's exterior. We review the district court's factual findings regarding the search of the bag for clear error and its conclusion as to whether the search violated the Fourth Amendment de novo. See United States v. Martinez, 78 F.3d 399, 401 (8th Cir. 1996). The magistrate judge found that Delameter's physical manipulation of the exterior of the bag constituted an improper search within the meaning of the Fourth Amendment. Specifically, the magistrate judge concluded that "by handling defendant's bag in this manner, the detective departed from the type of handling a passenger would reasonably expect his luggage to be subjected to and entered the domain protected by the Fourth Amendment."[3]

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause ." U.S. Const. amend. IV. A defendant moving to suppress evidence on the basis of an unlawful search bears the burden of proving that he had a legitimate expectation of privacy that was violated by the challenged search. See United States v. Muhammad,

---

[3]The magistrate judge found inconsistencies in Delameter's testimony regarding the manner in which he felt the bag. The magistrate judge noted that Delameter testified at the suppression hearing that his touching and smelling of the bag was merely incident to turning the bag to check for a name tag. The magistrate judge found this testimony to be inconsistent with Delameter's affidavit, his testimony at the preliminary and detention hearing, and even his later testimony at the suppression hearing, all of which showed that Delameter's intention was to feel the bag for narcotics and to "breathe" the bag in order to smell its contents. Having reviewed the record, we do not think these findings are clearly erroneous.

58 F.3d 353, 355 (8th Cir. 1995). To establish a legitimate expectation of privacy, the defendant must demonstrate: (1) a subjective expectation of privacy; and (2) that the subjective expectation is one that society is prepared to recognize as objectively reasonable. See id. There is no dispute that Gwinn had a subjective expectation that the exterior of his bag, placed on an overhead rack of a train, would not be subjected to physical manipulation by others. The question before us then is whether this expectation is one that society would recognize as reasonable. The government argues that it is not. We disagree.

Individuals possess a privacy interest in the contents of their personal luggage that is protected by the Fourth Amendment. See United States v. Place, 462 U.S. 696, 707 (1983); United States v. Nicholson, 144 F.3d 632, 636 (10th Cir. 1998). Of course, not every intrusion with an individual's luggage constitutes a search within the meaning of the Fourth Amendment. For example, a canine sniff of an individual's luggage does not constitute a search. See United States v. Harvey, 961 F.2d 1361, 1363 (8th Cir. 1992). Similarly, no search occurs when an officer briefly moves luggage from the overhead compartment of a bus to the aisle in order to facilitate a canine sniff. See id. at 1364 (stating that passengers have no objective, reasonable expectation of privacy from such action because it is not uncommon for other passengers or the bus driver to move baggage in order to rearrange and maximize use of compartment space); United States v. Gant, 112 F.3d 239 (6th Cir. 1997) (same); see also United States v. Gault, 92 F.3d 990 (10th Cir. 1996) (no search when officer kicked and lifted a bag protruding into aisle of a train compartment to determine its weight and also when officer sniffed the bag); United States v. Guzman, 75 F.3d 1090 (6th Cir. 1996) (no search when officer merely placed hand on bag in the overhead rack and asked to whom it belonged).

We think, however, that Delameter's contact with Gwinn's bag, went beyond the limited intrusiveness of a canine sniff or the incidental touching of luggage which took place in Harvey. Just recently, we stated that we had "grave doubts about the

-6-

constitutional propriety" of an officer's conduct when he lifted, manipulated, and felt along the bottom of a bag in the overhead compartment of a Greyhound bus. Washington, 146 F.3d at 537. In Nicholson, the Tenth Circuit held that an unlawful search took place when officers felt the sides of luggage in the overhead racks of a bus without a warrant, probable cause, reasonable suspicion, or consent. See Nicholson, 144 F.3d at 638-39. While it acknowledged that luggage placed in the overhead racks of a commercial bus was subject to some intrusions, the court emphasized that "[t]he degree of intrusion is the determining factor as to whether an officer's contact with the exterior of luggage constitutes a search under the Fourth Amendment." Id. at 639. The court found that the officer's manipulation went beyond the degree of intrusion that a passenger would reasonably expect his bag to encounter from other passengers. See id. But see United States v. Bond, 167 F.3d 225 (5th Cir. 1999) (holding that feeling and squeezing exterior of luggage in overhead compartment of bus is not a search under the Fourth Amendment), petition for cert. filed, No. 98-9349 (U.S. May 10, 1999); United States v. McDonald, 100 F.3d 1320 (7th Cir. 1996) (same).

We agree with the line drawn by the Tenth Circuit. While a passenger can expect that others will perhaps push aside or briefly touch his bag in an attempt to accommodate their own luggage or to maximize storage space, we think that the majority of the traveling public would not expect their luggage, even those pieces placed in an overhead compartment, to be subject to a calculated and thorough squeezing and manipulation of their exteriors.[4] Unlike a canine sniff or the incidental touching that accompanies the moving of luggage from the overhead, the feeling and manipulation of a bag's exterior involves a much more intrusive and prolonged contact

---

[4]Unlike the situation with airline travel, train passengers are not routinely given advance notice that inspection of their luggage is a condition of their travel. Thus, it cannot be said that by utilizing train transport, they have impliedly consented to a subsequent search of their luggage. See McDonald, 100 F.3d at 1330 n.5 (Ripple, J., dissenting).

with the piece.  Cf. Place, 462 U.S. at 707 (finding canine sniff of luggage to be a very limited intrusion that reveals only presence or absence of narcotics).  Indeed, we can envision situations where the extensive tactile examination of a soft-sided bag's exterior by an officer may reveal almost as much information as opening the bag itself, such as information about the number, shape, and character of items, perhaps very personal items, inside the bag.  See Nicholson, 144 F.3d at 639; McDonald, 100 F.3d at 1333 (Ripple, J., dissenting).

While we are not unsympathetic to the uphill task faced by law enforcement in their efforts to curb the flow of illegal narcotics through the nation's channels of commerce, we must guard against the temptation to eviscerate the protections of the Fourth Amendment for the sake of expediency.  We conclude that Delameter's feeling of Gwinn's bag while it was on the overhead rack constitutes a search within the meaning of the Fourth Amendment and because the officers had neither a warrant, probable cause, reasonable suspicion, nor consent, the search was unlawful.[5]

## III.   CONCLUSION

For the foregoing reasons, we find that the district court did not err in granting Gwinn's motion to suppress.  The decision of the district court is affirmed, and the case remanded with further proceedings consistent with this opinion.

---

[5]We do not decide whether the officers could have conducted a warrantless search of the exterior of the bag if they had had probable cause or reasonable suspicion, because there is no evidence of either in this case.  The only reason given for Delameter's decision to search the bag was that it had no name tag.  We find that this fact alone does not amount to probable cause or even reasonable suspicion of contraband. Many passengers do not place name tags on their luggage, particularly carry-on luggage.

A true copy.

Attest:

     CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.