Alicia REEVES and Ashlee
Reeves, Plaintiffs,

v.

Alex CHURCHICH, Ray Lopez, Officer Odor, Kevin Jones, Ron L. Bruno, David Wierman, C. Housley, Officer Wichman, Officer Hedenstrom, Louie D. Munoz, and John and Jane Does 1–15, Defendants.

No. 2:02 CV 0551 DAK.

United States District Court,
D. Utah,
Northern Division.
Central Division.

Sept. 2, 2004.

1348

Matthew H. Raty, Esq., Law Office of
Matthew H Raty, Salt Lake City, UT, for
Plaintiffs.

J. Wesley Robinson, Esq., Salt Lake City Attorneys Office, Salt Lake City, UT, T.J. Tsakalos, Esq., Salt Lake County Attorneys Office, Salt Lake City, UT, for Defendants.

## MEMORANDUM DECISION AND ORDER

KIMBALL, District Judge.

This matter is before the court on (1) Defendants Kevin Jones, David Wierman, and Christie Housley's (collectively referred to herein as "City Defendants") Motion for Summary Judgment, (2) Defendant Churchich's Motion for Summary Judgment, (3) Defendant Churchich's Motion to Strike Paragraph and Exhibit from Plaintiffs' Memorandum in Opposition to Defendants' Motions for Summary Judgment, and (4) Defendant Churchich's Motion to Strike Portions of the Affidavits of Alicia Reeves and Ashlee Reeves. The City Defendants have joined in both motions to strike submitted by defendant Churchich. A hearing on the motions was held on July 27, 2004. At the hearing, plaintiffs Alicia Reeves and Ashlee Reeves were represented by Matthew H. Raty. The City Defendants were represented by Nicholas D'Alesandro and defendant Alex Churchich was represented by J. Wesley Robinson. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to these motions. Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. MOTIONS FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is appropriate if the record before the court shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "When, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden by pointing to a 'lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Sports Unlimited, Inc. v. Lankford Enter., Inc.,* 275 F.3d 996, 999 (10th Cir.2002) (quoting *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir.1998)). "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. The court will "view the evidence and draw any inferences therefrom in the light most favorable to the party opposing summary judgment." *MacDonald v. Delta Air Lines, Inc.,* 94 F.3d 1437, 1440 (10th Cir.1996).

### B. Background

Plaintiffs claim that their Fourth Amendment rights to be free from unreasonable searches and seizures were violated when defendants attempted to arrest a suspect believed to be staying in the same apartment duplex as plaintiffs. Plaintiffs resided in the lower level apartment of the duplex and defendants were searching for a suspect believed to be staying in the upper level apartment. The primary factual basis for the claims is that the officers pointed guns at the plaintiffs on several occasions while attempting to locate and arrest the suspect. Plaintiffs seek relief under 42 U.S.C. § 1983 and allege state law causes of action for: (1) assault; (2)

unlawful detention; and (3) intentional infliction of emotional distress. Plaintiffs also allege that defendant Churchich is responsible for the constitutional violations of the other defendants under the doctrine of supervisory liability. Based upon the stipulations of the parties, the court previously dismissed all claims against defendants Ray Lopez, Officer Odor, Ron L. Bruno, Officer Wichman, Louie D. Muniz, and Officer Hedenstrom. The remaining defendants have moved for summary judgment as to all claims.

Defendant Churchich is a detective with the Salt Lake County Sheriff's Office. The City Defendants are all members of the Salt Lake City Police Department. Detective Churchich received information that a suspect he was seeking to arrest for domestic assault might be staying with relatives in an apartment located in the upstairs half of a duplex in Salt Lake City. The downstairs half of the duplex was occupied by plaintiffs Alicia Reeves and her daughter Ashlee Reeves. At the time of the incident, Alicia Reeves was 14 years old. Detective Churchich contacted the Salt Lake City Police Department for assistance in apprehending the suspect. Detective Churchich and the participating Salt Lake City police officers had reason to believe that the suspect had access to firearms and therefore could be armed. On June 21, 2000, the defendants attempted to apprehend the suspect at the duplex. The officers did not have an arrest warrant for the suspect or a search warrant for either apartment in the duplex. Detective Churchich believed there was probable cause to arrest the suspect and intended to get permission to enter and search the upstairs apartment of the duplex.

As the officers approached the duplex, some went to the front door and others circled the building to do "containment." The duplex has one exterior door in the front that provides an entryway and access via stairways to both the upper and lower apartments in the duplex. All of the officers were armed. Ashlee Reeves claims that she was in her room naked after having just exited the shower when she saw a police officer outside of her open but barred window pointing a gun at her and telling her not to move. She immediately grabbed a towel and fled the bedroom to tell her mom about what was going on. Ashlee's mom, Alicia, was asleep on the couch. Ashlee woke her mom and then went into her mom's bedroom to put on some clothes. Ashlee claims that while in her mother's bedroom another gun was pointed at her through the bedroom window and the officer instructed her to "get down on the floor." In response to the officer's command, Ashlee closed the blinds in her mother's bedroom and went back to the living room to once again try to wake her mom.

Due to the Reeves' dog barking and Ashlee's attempts to wake her, Alicia awoke and decided to let the dog outside. Alicia claims that while attempting to put her dog outside, a police officer put a handgun to her head and said "hold it right there." Alicia claims that she responded to this show of force by pushing the gun away and asking questions about what was going on. Alicia went back into her apartment but then returned to try and ask the officers more questions about what was taking place. According to plaintiffs' statement of facts, Alicia began yelling at the officers because she felt they were hurting her neighbor. Alicia alleges that in response to her questioning, a female officer called her a "bitch" and told her to get back in her apartment. The police never found the suspect at the duplex. He was later apprehended in Las Vegas, Nevada.

The police officers never entered the Reeves apartment nor did they physically

restrain or touch plaintiffs. The only allegation is that the officers pointed firearms at plaintiffs on several occasions, instructed them to go back inside or stay in their apartment, and on one occasion, called Alicia a "bitch." It is also uncontested that on several occasions Alicia and Ashlee ignored the officers' commands. Plaintiffs do not claim any physical injuries from the incident, but rather, seek to recover for emotional and psychological injuries.

## C. Discussion

### 1. *Qualified Immunity*

 Defendants have properly raised the affirmative defense of qualified immunity. By doing so, the burden shifts to the plaintiffs to demonstrate that the defendants violated a constitutional right and that the right was clearly established at the time of defendants' conduct. *See Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1185–86 (10th Cir.2001). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Id.* at 1186.

 For plaintiffs to prevail on their Fourth Amendment claim, they must establish that there was a search and/or seizure and that the search and/or seizure was unreasonable. "A seizure of the person within the meaning of the Fourth and Fourteenth Amendments occurs when, 'taking into account all the circumstances surrounding the encounter,' the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Kaupp v. Texas,* 538 U.S. 626, 629, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003) (quoting *Florida v. Bostick,* 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (citation omitted)). "It must be remembered that '[t]he Fourth Amendment prohibits unreasonable *seizures,* not unreasonable or ill-advised conduct in gen-

eral.'" *Bella v. Chamberlain,* 24 F.3d 1251, 1256 (10th Cir.1994) (quoting *Cole v. Bone,* 993 F.2d 1328, 1333 (8th Cir.1993) (emphasis in original)). "A search for purposes of the Fourth Amendment occurs when government officials violate an individual's legitimate expectation of privacy." *United States v. Nicholson,* 144 F.3d 632, 636 (10th Cir.1998).

 The Fourth Amendment requires the court to examine the reasonableness in which a search or seizure is conducted. "The determination of reasonableness of a seizure involves the balancing of the individual's Fourth Amendment interests against the importance of the governmental interest at stake." *Thompson v. City of Lawrence, Kansas,* 58 F.3d 1511, 1517 (10th Cir.1995). Fourth Amendment reasonableness must be objectively examined under the totality of the circumstances. *See Holland,* 268 F.3d at 1195. When judging the reasonableness of the officers' actions in this case, the court must take into account the uncertain and evolving circumstances inherent in attempting to locate and arrest a potentially violent suspect.

 Assuming that the plaintiffs can establish that a search or seizure took place, the court finds that plaintiffs have failed to demonstrate that the defendants actions were objectively unreasonable under the totality of the circumstances. It is well-established that it is reasonable for an officer to temporarily display force or restrain a person until that person's relationship to the suspect and possible reaction to the situation can be ascertained. *See Thompson,* 58 F.3d at 1517 ("Given the volatility of the situation, we hold that it was objectively reasonable for the officers to temporarily restrain [plaintiff], whose relationship to [the suspect] and possible reaction to the situation were unknown."). As noted by the Supreme Court, "[t]he risk of harm to both the police and the

occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Michigan v. Summers*, 452 U.S. 692, 702, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). It is undisputed that the plaintiffs largely ignored the officers's commands thereby greatly increasing the volatility of the plaintiffs' encounter with the officers.

This is not a situation, as was found in *Holland*, where the officers allegedly held children that posed no threat of danger at gunpoint on the ground for ten to fifteen minutes. *Holland*, 268 F.3d at 1192. Plaintiffs only had weapons pointed at them for a few seconds at a time and rarely, if ever, submitted to the officers' commands. Even in *Holland*, the court noted that the officers "initial show of force may have been reasonable under the circumstances" but that the officers crossed the line when they continued to hold the children at gunpoint "after the officers had gained complete control of the situation." *Id.* at 1193. The officers in the instant case never gained complete control over the plaintiffs, nor did they hold the plaintiffs at gunpoint for extended periods of time. The defendants show of force was reasonable given the totality of the circumstances.

While an officer's use of a term such as "bitch" towards a citizen is certainly no cause for commendation, it is not sufficient to rise to the level of a Fourth Amendment violation under the totality of the circumstances in this case.

In evaluating the Fourth Amendment reasonableness of a seizure, the officers' verbal interaction as well as their physical conduct become part of the totality of the circumstances to be considered. While it seems unlikely that harsh language alone would render a search or seizure "unreasonable," verbal abuse may be sufficient to tip the scales in a close case.

*Id.* at 1194. The only allegation made against Officer Housley is that she called Alicia a "bitch" and told her to get back in her apartment. That alone, is not enough to find Officer Housley liable for violating plaintiffs' Fourth Amendment rights. Likewise, the other defendants' momentary pointing of weapons at plaintiffs while attempting to locate and arrest a potentially armed suspect believed to be in the same building as plaintiffs, does not rise to the level of a Fourth Amendment violation.

### 2. *Supervisor Liability*

■ A supervisor "may be held liable for the alleged unconstitutional acts of his subordinates if [plaintiffs] demonstrate an 'affirmative link' through facts showing that he actively participated or acquiesced in the constitutional violation." *Id.* at 1187. The court need not determine whether Detective Churchich was a supervisor to the City Defendants because the court has already held that defendants did not commit any constitutional violations and therefore Detective Churchich cannot be found liable under a theory of supervisor liability.

### 3. *State Law Claims*

■ Utah's Governmental Immunity Act prohibits plaintiffs from pursuing their claims for assault, unlawful detention, and intentional infliction of emotional distress unless they can prove defendants "acted or failed to act through fraud or malice." Utah Code Ann. § 63–30–4(3)(b)(i). Plaintiffs' brief cites a new version of the Governmental Immunity Act that became effective on July 1, 2004 to argue that they need only prove "willful misconduct." (Pls.' Mem. in Opp'n. to Defs.' Mot. for Summ. J. at 40–41.) The Utah Code states that "[n]o part of these revised statutes is retroactive, unless expressly so declared." Utah Code Ann. § 68–3–3. "Utah courts follow the general rule that 'a stat-

ute generally cannot be given retroactive effect unless the legislature expressly declares such an intent in the statute.'" *Thomas v. Color Country Management*, 84 P.3d 1201, 1209–10 (Utah 2004) (Durham, J., concurring) (quoting *Washington Nat'l Ins. Co. v. Sherwood Assocs.*, 795 P.2d 665, 667 (Utah Ct.App.1990)). The new version of the Governmental Immunity Act cited by plaintiffs does not contain an express declaration that it is retroactive and therefore is not applicable to this case. The proper standard for determining whether the state law claims can survive Utah's Governmental Immunity Act is whether the defendants "acted or failed to act with fraud or malice." Utah Code Ann. § 63–30–4(3)(b)(i).

There is no allegation in this case of fraud and plaintiffs have failed to provide evidence sufficient to support a finding that the defendants acted with malice. It is undisputed that plaintiffs were not the target of the officers' activities at the duplex. Plaintiffs were unknown to the officers prior to the incident and there is not sufficient evidence of ill will or spite towards the plaintiffs to support a finding of malice. Plaintiffs' state law causes of action are barred by Utah's Governmental Immunity Act.

## II. MOTIONS TO STRIKE

■ Defendants have moved to strike certain portions of Alicia Reeves' and Ashlee Reeves' affidavits as well as the testimony of plaintiffs' expert. The court has carefully reviewed that affidavits of Alicia Reeves and Ashlee Reeves and determined that, even if admitted, they do not contain any factual allegations that would affect the outcome in this case. The motion to strike portions of the affidavits of Alicia Reeves and Ashlee Reeves is moot.

■ Paragraph 108 of plaintiffs' material facts states "[e]xpert D.P. Van Blaricom ... has testified that Plaintiffs were seized, that Defendants' actions were objectively unreasonable, and that Defendant Churchich failed to properly supervise the SLCPD Officers." (Pls.' Mem. in Opp'n. to Defs.' Mot. for Summ. J. at 22.). In essence, plaintiffs' expert has stated a legal conclusion that defendants' actions violated the Fourth Amendment. It is the court-not plaintiffs' expert-that is responsible for determining whether defendants' conduct violates the Fourth Amendment for purposes of the qualified immunity analysis. The court will not strike the report and testimony of Mr. Van Blaricom in its entirety, but will disregard his testimony to the extent it merely states a legal conclusion.

## III. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that: (1) Defendants Kevin Jones, David Wierman, and Christie Housley's Motion for Summary Judgment is GRANTED; (2) Defendant Churchich's Motion for Summary Judgment is GRANTED; (3) Defendant Churchich's Motion to Strike Portions of the Affidavits of Alicia Reeves and Ashlee Reeves is MOOT; and (4) Defendant Churchich's Motion to Strike Paragraph and Exhibit from Plaintiffs' Memorandum in Opposition to Defendants' Motions for Summary Judgment is GRANTED in part and DENIED in part. This case is dismissed with prejudice in its entirety. The Clerk of the Court is directed to enter judgment accordingly.