STATE OF NEBRASKA, APPELLEE, V.
JESUS A. AGUIRRE-ROJAS, APPELLANT.
571 N.W. 2d 70

Filed December 5, 1997.    No. S-96-939.

Thomas M. Kenney, Douglas County Public Defender, and Jeffrey L. Thomas for appellant.

Don Stenberg, Attorney General, and David K. Arterburn for appellee.

White, C.J., Caporale, Wright, Connolly, Gerrard, Stephan, and McCormack, JJ.

McCormack, J.

## NATURE OF CASE

Following the denial of his motion to suppress evidence, appellant, Jesus A. Aguirre-Rojas, was convicted in the district court for Douglas County, Nebraska, of one count of unlawful possession of a controlled substance (methamphetamine) with intent to deliver, a Class III felony, and was sentenced to 9 to 10 years' imprisonment with credit for 240 days previously served. Appellant asserts that the physical evidence seized from his bag and his subsequent statements should have been suppressed and ruled inadmissible at trial and that the sentence imposed by the district court was excessive and, as such, an abuse of discretion. On our own motion, we removed the matter to this court under our authority to regulate the caseloads of the Nebraska Court of Appeals and this court. We affirm.

## BACKGROUND

On December 13, 1995, Officer James Burns, a Nebraska State Patrol officer with 19 years' experience, was on duty as a plainclothes officer at Omaha's Eppley Airfield. In conjunction with Investigator Gary Shillito of the airport police and Officer Brenda Konfrst of the Nebraska State Patrol, Burns was patrolling the airport in search of individuals trafficking in narcotics. Burns was stationed near gate 15, at the south terminal, watching passengers deplane Delta flight 977 from Salt Lake City. As Burns watched the passengers deplane, he took notice of appellant, who "made eye contact longer than normal" with Burns. Appellant left the gate area, with Burns following at a distance, and walked across a satellite area which joined the gates to the rest of the airport. Over the 50-foot distance traversed by the two, appellant looked back over his shoulder at Burns approximately five times. Appellant then entered a restroom, with Burns still following, and entered a stall. Burns stayed in the restroom but could not hear indication of "any bodily functions" coming from the stall occupied by appellant. Appellant exited the restroom, and Burns lost sight of him in passenger traffic.

Burns spotted appellant again near gate 11 and resumed following appellant. Appellant again went toward a restroom but did not enter the facility, stopping instead to get a drink. Appellant next went to a telephone, which he picked up and held for approximately a minute, but he did not appear to Burns to be talking to anyone. Appellant exited the airport through the revolving center door, while Burns used the hinged door to the left of the revolving door and Shillito used the hinged door to its right. While appellant stood at the curb looking up and down the street, Burns approached him and took up a position next to him, while Shillito stayed a few steps behind appellant. Burns made a remark to appellant along the lines of "how ya doing." Appellant made no reply but merely continued to look up and down the street abutting the curb. Burns showed appellant his badge and identification and advised him he was a law enforcement officer. Appellant was now looking at Burns and appeared to understand what Burns was saying. Burns advised appellant that he was not under arrest and that at any time he was free to walk away. He asked appellant if he was in Omaha on business, to which appellant replied by shaking his head "no." Burns asked if he was there to visit family, and appellant indicated he was. Burns asked to see his airline ticket, and appellant handed him a ticket from Delta flight 977 in the name "Alfredo Rojas." The ticket was a one-way ticket from Seattle to Omaha purchased at the Seattle airport for cash. Burns asked appellant his name, and appellant replied it was "Alfredo Rojas." Burns returned the ticket to appellant and asked if he was born in the United States. Appellant seemed confused so Burns asked him in Spanish where he was born, and appellant replied "Mexico." Burns requested a resident alien card, which confused appellant. Appellant said the word "I.D." to which Burns replied "yes," and appellant produced an identification card from Mexico. The identification card had the name "Jesus Alfredo Aguirre-Rojas." Burns returned the identification card and placed a call to Immigration and Naturalization Service (INS) using his cellular phone. Burns talked to Special Agent Michael G. Wardy of INS and asked Wardy to explain to appellant that Burns was a law enforcement officer; that appellant was not under arrest; that he did not have to talk to Burns; and that he

was free to go, but that Burns would like to search his bag. He handed the phone to appellant, who had a conversation with Wardy in Spanish. Following his conversation with Wardy, appellant handed the phone back to Burns, at which time Wardy told Burns that he had explained everything to appellant, that appellant had understood the situation, and that appellant had told them to "search the damn bag because you're going to do it anyway." Wardy told Burns he had explained to appellant that "no they would not search the bag if he did not want us to do so." Wardy told appellant they needed a concrete answer from appellant that yes they could search the bag or no they could not, and appellant had said yes they could search it.

Burns requested that appellant move over to a baggage carousel inside the terminal building and again asked in English if they could search the bag, at which point appellant set the bag on the ground. Shillito searched the bag and found three bundles of a tan powdery substance later discovered to be methamphetamine. At that point, the officers placed appellant under arrest. The two officers called Wardy to have him explain to appellant that he was no longer free to leave and read appellant his *Miranda* rights in Spanish. The above was testified to by Burns and Wardy at the hearing on the motion to suppress. The court denied appellant's motion.

At the bench trial of the case, the reports of both officers were introduced into evidence over the objection of appellant's counsel. The report of Wardy contained information obtained during an interview of appellant following a waiver of his *Miranda* rights. Appellant told investigators he had been staying illegally in California since coming from Mexico and had been working in construction to save money for the plane ticket to Omaha and the drugs. Appellant stated he had purchased the three bundles for $1,500 each, that he had only $60 left to his name, and that he intended to sell the drugs in Omaha for between $10,000 and $15,000 and then return to Mexico when finished. He stated he did not wish to cooperate with law enforcement officers in finding out the identity of the individual who sold him the drugs, despite being informed of the seriousness of the charges leveled against him.

Following trial to the court, appellant was found guilty of unlawful possession of a controlled substance with intent to deliver. During the imposition of sentence, the trial judge discussed the amount of methamphetamine brought to Omaha by appellant and the need to focus on that amount in sentencing. The trial judge sentenced appellant to 9 to 10 years' imprisonment with credit for 240 days served. The charge was a Class III felony, which carries a penalty of 1 to 20 years' imprisonment, a fine of up to $25,000, or both.

## ASSIGNMENTS OF ERROR

Appellant assigns as error (1) that the physical evidence seized from his bag by law enforcement officers and his subsequent statements should have been suppressed and ruled inadmissible at his trial and (2) that the sentence imposed by the district court was excessive and, as such, an abuse of discretion.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Soukharith, ante* p. 310, 570 N.W.2d 344 (1997); *State v. Ready,* 252 Neb. 816, 565 N.W.2d 728 (1997); *State v. Merrill,* 252 Neb. 510, 563 N.W.2d 340 (1997); *State v. McCleery,* 251 Neb. 940, 560 N.W.2d 789 (1997); *State v. Konfrst,* 251 Neb. 214, 556 N.W.2d 250 (1996). If there is no detention or seizure within the meaning of the Fourth Amendment to the U.S. Constitution, then the Fourth Amendment safeguard against an unreasonable search and seizure is not implicated in an encounter between a private citizen and a police officer. *State v. Soukharith, supra; State v. Twohig,* 238 Neb. 92, 469 N.W.2d 344 (1991).

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. McBride,* 252 Neb. 866, 567 N.W.2d 136 (1997); *State*

*v. Schultz,* 252 Neb. 746, 566 N.W.2d 739 (1997); *State v. Merrill, supra; State v. Earl,* 252 Neb. 127, 560 N.W.2d 491 (1997); *State v. Cook,* 251 Neb. 781, 559 N.W.2d 471 (1997). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Merrill, supra; State v. Earl, supra; State v. Cook, supra; State v. Orduna,* 250 Neb. 602, 550 N.W.2d 356 (1996).

## ANALYSIS

Appellant argues that the stop effectuated by Burns, Shillito, and Konfrst was a *Terry* stop, as defined by *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). In *Terry,* the U.S. Supreme Court held that an officer could briefly detain an individual without the probable cause necessary to arrest that person if the officer had a reasonable belief, supported by specific articulable facts, that criminal activity was afoot. Appellant argues that Burns, Shillito, and Konfrst had insufficient grounds under this test to detain him for questioning. We disagree, as appellant was not "detained" within the meaning of the Fourth Amendment to the U.S. Constitution. If there is no detention or seizure within the meaning of the Fourth Amendment, then the Fourth Amendment safeguard against unreasonable search and seizure is not implicated in an encounter between a private citizen and a police officer. *State v. Soukharith, supra; State v. Twohig, supra.*

If a citizen voluntarily submits to noncoercive questioning by police, the Fourth Amendment is not implicated. The Seventh Circuit Court of Appeals echoed the above sentiment in *U.S. v. Edwards,* 898 F.2d 1273, 1276 (7th Cir. 1990), stating:

> Law enforcement officers "do not violate the fourth amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if he is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." . . . In this sort of police/citizen encounter, "the degree of suspicion that is required is zero."

In a voluntary encounter between a citizen and a police officer, the Fourth Amendment is not implicated by officers' merely

asking an individual for identification or asking other benign questions to obtain information regarding conduct by the individual. Nor does the fact that the individual posing questions to the citizen identifies himself or herself as a police officer change the encounter into a seizure. See, *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). The facts of this case are similar to those in *U.S. v. Gray*, 883 F.2d 320 (4th Cir. 1989). In *Gray*, Drug Enforcement Administration agents dressed in street clothes did not display any weapons or make any attempt to restrain the defendant, but walked with him as he moved through an airport toward the exit and obtained consent to search after informing the defendant that he did not have to consent to the search of his person. The court said this constituted a consensual encounter rather than a Fourth Amendment seizure.

In the present case, Burns and Wardy made it clear to appellant that he was free to leave at any time. The officers' questions were not coercive, nor did they lay hands upon or show weapons to appellant. The compliance with the officers by appellant was completely voluntary. As such, we conclude that no seizure of appellant occurred.

In reviewing the memorandum and order denying appellant's motion to suppress, we find no clear error. The trial court properly applied the "totality of the circumstances" test to the actions of the police and found they had not seized appellant for the purposes of Fourth Amendment scrutiny. We find no clear error in the findings of fact by the trial court that no seizure of appellant took place.

Appellant argues that his consent to the search of his bag was the product of will overborne due to the facts that appellant is an illegal alien and that one of the officers who communicated his option to terminate the encounter was an INS agent. Noting the passage previously quoted from *Edwards, supra*, we find this argument unpersuasive. As the U.S. Supreme Court held in *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973):

> [W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that

> it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.

An officer need not give any warning to a citizen that he or she may freely refuse a request to search. In this case, Burns and Wardy warned appellant three times in two languages that he was free to refuse to consent to a search of the bag. The trial court ruled that "[u]nder all of the circumstances, I believe that a reasonable man would have understood that he was free to decline the request." We find the mere fact that one of the officers was an INS agent insufficient to vitiate the voluntariness of appellant's consent.

Appellant further assigns as error that the sentence imposed by the district court was excessive and, as such, an abuse of discretion. Appellant was convicted of a Class III felony, for which the penalty is a maximum of 25 years' imprisonment, a $25,000 fine, or both, and a minimum of 1 year's imprisonment. Neb. Rev. Stat. § 28-105 (Reissue 1995). The trial court considered appellant's apparent lack of prior criminal history, but properly determined that a sentence which did not focus on the amount of methamphetamine transported by appellant would deprecate the seriousness of the offense. The sentence imposed by the district court is not clearly untenable, and we find no abuse of discretion.

## CONCLUSION

The encounter between appellant and the officers was purely consensual. As such, the encounter clearly does not rise to the level of a *Terry* stop requiring a reasonable suspicion on the part of the officers. The finding of the trial court that this case amounted to a consensual encounter was not clearly erroneous and thus may not be disturbed on appeal. The sentence imposed by the district court was within the statutory guidelines and was not clearly untenable, nor did it unfairly deprive appellant of a substantial right or a just result. As such, no abuse of discretion

is found, and the conviction and sentence of appellant are affirmed.

AFFIRMED.