**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-50074

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

STEVEN DEWAYNE BOND,

Defendant - Appellant.

Appeal from the United States District Court
For the Western District of Texas

February 8, 1999

Before KING, Chief Judge, DUHÉ, and DeMOSS, Circuit Judges

DUHÉ, Circuit Judge:

Drugs were found in Appellant's luggage at a border checkpoint. He appeals the denial of his Motion to Suppress. We affirm.

**BACKGROUND**

Stephen DeWayne Bond ("Bond") was a passenger on a Greyhound bus that was stopped at the permanent Border Patrol checkpoint at Sierra Blanca, Texas. Border Patrol Agent Cesar Cantu ("Agent Cantu") diverted the bus into the secondary checkpoint traffic lane to conduct an immigration inspection.

Agent Cantu checked the immigration status of the passengers as he worked his way toward the back of the bus. After he reached

the back of the bus and was satisfied that the passengers were lawfully in the United States, Agent Cantu walked back toward the front of the bus. As he did so, he began feeling and squeezing passengers' luggage in the overhead compartments.

As Agent Cantu inspected the luggage in the compartment above Bond's seat, he squeezed a green bag and noticed that the bag contained a "brick-like" object. Bond admitted that the bag was his and consented to its search. While searching the bag, Agent Cantu discovered a "brick" of methamphetamine. After Bond was advised of his <u>Miranda</u> rights, Bond admitted that he was transporting the methamphetamine to Little Rock, Arkansas.

Bond was indicted for conspiracy to possess and possession with intent to distribute methamphetamine. Contending that Agent Cantu conducted an illegal search, Bond unsuccessfully moved to suppress the methamphetamine and for reconsideration. Bond waived a jury trial and the district court found Bond guilty on both counts of the indictment and sentenced him to 57 months imprisonment. Bond appeals the denial of his motion to suppress.

## DISCUSSION

In reviewing a district court's denial of a defendant's motion to suppress, we review factual findings for clear error and conclusions of law <u>de</u> <u>novo</u>. <u>See</u> <u>United States v. Carillo-Morales</u>, 27 F.3d 1054, 1060-61 (5th Cir. 1994). We review the evidence in the light most favorable to the prevailing party. <u>United States v. Ishmael</u>, 48 F.3d 850, 853 (5th Cir. 1995).

Bond consented to the search of the inside of his bag,

2

therefore, we consider only whether Agent Cantu violated Bond's Fourth Amendment rights prior to Bond's consent to the search. For the following reasons, we conclude that Agent Cantu did not.

## I. Whether Squeezing Bond's Luggage Constituted a Search f o r Fourth Amendment Purposes?

"Government action amounts to a search when it infringes an expectation of privacy that society is prepared to accept as reasonable." U.S. v. McDonald, 100 F.3d 1320, 1324 (7th Cir. 1996), cert. denied, 117 S.Ct. 2423 (1997) (citing United States v. Jacobsen, 104 S.Ct. 1652, 1656 (1984). However, "[w]hat a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." Katz v. United States, 88 S.Ct. 507, 511 (1967).

Bond insists that Agent Cantu's manipulation of his bag constituted a search for Fourth Amendment purposes. We disagree. Bond stored his bag in the overhead luggage bin of a Greyhound bus.[1] The bin was a common area of the bus, and it was foreseeable that his bag would be squeezed, moved, and manipulated by others. On common carriers, passengers often handle and manipulate other passengers' luggage while stowing or retrieving their own luggage. By placing his bag in the overhead bin, Bond knowingly exposed it to the public and, therefore, did not have a reasonable expectation

---

[1]The record is unclear as to whether the overhead luggage bin was of the open or closed type. Both types of bins are accessible to the general public. Therefore, we conclude that the distinction between open and closed luggage bins is irrelevant for Fourth Amendment purposes.

3

that his bag would not be handled or manipulated by others.[2]  See McDonald, 100 F.3d at 1327 (holding that officer's manipulation of bags on the overhead rack of a Greyhound bus was not a search because the defendant "did not have a legitimate expectation that her luggage left in such a place would not be handled by others."); U.S. v. Guzman, 75 F.3d 1090, 1095 (6th Cir. 1996) (holding that the defendant did not have a reasonable expectation of privacy in the exterior of a bag that he placed on the luggage rack of a Greyhound bus); United States v. Harvey, 961 F.2d 1361, 1364 (8th Cir. 1992) (stating that "[p]assengers have no objective, reasonable expectation that their baggage will never be moved once placed in an overhead compartment."); see also United States v. Lovell, 849 F.2d 910, 915 (5th Cir. 1988) (holding that manipulation of the defendant's baggage on an airport baggage carousel was not a search because the defendant did not have a reasonable expectation that the baggage would not be moved or handled); but see United States v. Nicholson, 144 F.3d 632, 639 (10th Cir. 1998) (holding that the manipulation of luggage stored in an overhead luggage bin was a search within the meaning of the Fourth Amendment).

Conceding that other passengers had access to his bag, Bond contends that Agent Cantu's actions constituted a search because Agent Cantu manipulated his bag in a different way than other

___

[2]We have upheld similar searches in two unpublished opinions,. See United States v. Cook, No. 92-8508 (5th Cir. Apr. 19, 1993); United States v. Wilson, No. 92-8312 (5th Cir. Feb. 22, 1993); see 5th Cir. R. 47.5.3.

passengers would.  See U.S. v. Nicholson, 144 F.3d 632, 639 (10th Cir. 1998) (reasoning that manipulation of the defendant's bag constituted a search because detectives squeezed the bag in a way that revealed more about the bag's contents than manipulation by other passengers may have).  We reject this argument.  The fact that Agent Cantu's manipulation of Bond's bag was calculated to detect contraband is irrelevant for Fourth Amendment purposes.  In California v. Ciraolo, 106 S.Ct. 1809, 1813-14 (1986), the Supreme Court held that a defendant who grew marijuana plants in his backyard knowingly exposed those plants to aerial observation.  The Court observed that the fact that "the observation from [the] aircraft was directed at identifying the plants and the officers were trained to recognize marijuana [was] irrelevant."  Id. at 1813.  Accordingly, we hold that Agent Cantu's manipulation of Bond's bag was not a search within the meaning of the Fourth Amendment.

## II.  Whether the Luggage Inspection at the Checkpoint Exceeded the Limits Imposed by United States v. Martinez-Fuerte?

Bond insists that the continued detention of the bus and its passengers after the immigration inspection was completed exceeded the strict limits for such inspections set forth by the Supreme Court in United State v. Martinez-Fuerte, 96 S.Ct. 3074 (1976).  He argues that detentions may last only long enough to ask questions and check citizenship status.  See United States v. Jackson, 825 F.2d 853, 862 (5th Cir. 1987)).  Noting that the Martinez-Fuerte Court forbade further detention without consent or probable cause,

5

Bond maintains that Agent Cantu's luggage inspection occurred after he concluded that all passengers on the bus were lawfully in the United States and was, therefore, impermissible. See Martinez-Fuerte, 96 S.Ct. at 3087.

We reject Bond's reading of Martinez-Fuerte. In the case at bar, the bus had no rear exit and Agent Cantu inspected the luggage compartment during his return to the front of the bus. There is no evidence that Agent Cantu's inspection of the overhead luggage compartment delayed the bus' departure more than an additional one or two minutes.[3] We do not read Martinez-Fuerte to mean that once Agent Cantu reached the back of the bus, he was required to jump out a window or sprint back to the front of the bus and jump out the door. Therefore, we conclude that the trivial delay caused by Agent Cantu's inspection did not violate the strict limits of a border checkpoint stop. See United States v. Muniz-Melchor, 894 F.2d 1430, 1432, 1436-37 (5th Cir. 1990) (tapping on the side of a truck's propane tank at a checkpoint was permissible even though the driver had already produced valid documentation).

Although Bond concedes that Martinez-Fuerte allows a visual inspection of areas that can be seen without a search, he contends that Agent Cantu's inspection was impermissible because it went beyond a visual inspection of the bus. See Martinez-Fuerte, 96 S.Ct. at 3083 (stating that, in a border checkpoint stop, "[n]either the vehicle nor its occupants are searched, and visual

_____

[3]In fact, the entire stop lasted only between five and ten minutes.

6

inspection of the vehicle is limited to what can be seen without a search."). We disagree. We have repeatedly permitted checkpoint inspections that were not visual but did not constitute searches. See, e.g., United States v. Hernandez, 976 F.2d 929, 930 (5th Cir. 1992) (permitting dog sniff at checkpoint); Muniz-Melchor, 894 F.2d at 1435-37 (holding that tapping on the side of a truck's propane tank at a checkpoint was permissible). Because Agent Cantu's inspection was not a search, the fact that it was tactile rather than visual did not make it impermissible.

## CONCLUSION

We affirm the denial of Bond's motion to suppress.

AFFIRMED.