STATE OF NEBRASKA, APPELLANT,
V. BRADLEY J. LANCELOTTI, APPELLEE.
595 N.W. 2d 558

Filed June 29, 1999.   No. A-98-1152.

Robert Francis Cryne, Deputy Douglas County Attorney, for appellant.

Thomas C. Riley, Douglas County Public Defender, and Scott C. Sladek for appellee.

MUES, Judge.

## INTRODUCTION

The State appeals a district court order suppressing evidence as allowed by Neb. Rev. Stat. §§ 29-824 to 29-826 (Cum. Supp.

1998). In this single-judge review, I am presented with an issue of first impression, that is, whether squeezing the exterior of luggage which has been placed in an overhead storage compartment of a bus in an area accessible to the public constitutes a search within the meaning of the Fourth Amendment to the U.S. Constitution.

## BACKGROUND

Richard Lutter, an investigator with the Nebraska State Patrol, was assigned to work the Omaha, Nebraska, Greyhound bus station. Lutter's duties were to watch the buses coming from the southwestern United States and heading for Chicago or New York. Lutter testified that it has been his experience that the southwestern area, including California and Texas, is the "source area" of narcotics distribution.

On the afternoon of February 24, 1998, Greyhound bus No. 2919 stopped in Omaha while en route to Chicago. After all of the passengers had left the bus, Lutter boarded and began observing luggage that had been left in the overhead compartment of the bus. The overhead compartment is an open area above the seats where passengers can store carry-on articles.

Lutter noticed a black backpack, which appeared to be new, and he observed no identification tags on the backpack. The overhead compartment was "eye level, head level pretty much" for Lutter. Lutter leaned forward, reached up, placed a hand on either side of the backpack, and squeezed in order to force air out. Lutter described this procedure as "poofing" and stated that it was designed to cause "an air exchange so that [officers] can smell the air from the bag." This procedure has also commonly been referred to as "prepping." Lutter testified that when he performed this procedure, he was able to detect the odor of marijuana. When asked whether he felt anything when he poofed the backpack, Lutter responded that when he put his hands on the exterior sides of the backpack, he felt that "the bag was basically stuffed full with hard — it was — felt like brick-shaped material." Lutter testified that brick-shaped objects were a common form for marijuana to be shipped in.

Because of Lutter's suspicions, Greyhound personnel announced that the "bus was going to be terminated" and

requested that all passengers reboard the bus, remove their personal items, and take the items into the main terminal. The black backpack, a black and white bag, and a jacket were left on the bus. Greyhound bus personnel collected these items, took the items to the ticket counter, and made a general announcement that the items could be claimed at the counter.

Lutter was observing from a distance to see who claimed the black backpack. Bradley J. Lancelotti went to the counter and claimed the backpack. Lutter then approached Lancelotti and advised Lancelotti that Lutter was a law enforcement officer (Lutter was not in uniform). Lutter asked Lancelotti for identification and ticket information. After returning the articles to Lancelotti, Lutter asked if Lancelotti was carrying any illegal drugs. Lancelotti indicated that he was not. Lutter then asked for permission to search Lancelotti's person and luggage. Lancelotti refused permission.

Lutter then asked Lancelotti if he would allow a trained canine to sniff his luggage. Lancelotti acceded to this request. A canine was brought in, and several bags were presented to it. The canine alerted to Lancelotti's bag. A search warrant was then obtained. Lancelotti was subsequently charged with possession of marijuana with intent to deliver, a Class III felony; possession of more than 1 pound of marijuana, a Class IV felony; and possession of cocaine with intent to deliver, a Class II felony.

Prior to trial, Lancelotti filed a motion to suppress the evidence discovered in his backpack. Lancelotti alleged that the information provided in the search warrant was based upon information obtained in violation of Lancelotti's constitutional rights. After a hearing held September 30 and October 20, 1998, the district court concluded that the manipulation of the backpack was an illegal search. Accordingly, the court sustained the motion to suppress. The State timely appeals. For the reasons set forth below, I reverse, and remand.

## ASSIGNMENT OF ERROR

The State alleges, restated, that the district court erred in finding that squeezing the sides of the backpack constituted an illegal search.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999); *State v. Chitty*, 253 Neb. 753, 571 N.W.2d 794 (1998); *State v. Aguirre-Rojas*, 253 Neb. 477, 571 N.W.2d 70 (1997). In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *Id.*

Regarding questions of law, an appellate court is obligated to reach a conclusion independent of the determinations reached by the trial court. *State v. Hill*, 255 Neb. 173, 583 N.W.2d 20 (1998).

When facts are undisputed, an appellate court reviews de novo the question of whether a search has occurred within the meaning of the Fourth Amendment to the U.S. Constitution. *U.S. v. Nicholson*, 144 F.3d 632 (10th Cir. 1998).

## DISCUSSION

The events leading to the discovery of the marijuana and cocaine are undisputed in this case. As found by the district court, Lutter

> "poofed" [Lancelotti's bag] or squeezed it as [officers] had with each piece of luggage in the rack, to allow air inside the bag to be exuded through the pours [sic] or other openings in the bag, and noted a smell of marijuana. There was no odor of marijuana until the bag was poofed. Simultaneously with the poofing of the backpack [Lutter] felt brick shaped objects in its interior, which is a common method for shipping marijuana.

Based upon these facts, the district court concluded that Lutter's "simultaneous poof and manipulation" was a search within the meaning of the Fourth Amendment.

The State contends "Lancelotti had a substantially diminished expectation of privacy in the backpack because he placed the bag in the public overhead compartment of a commercial carrier

and did not take the bag with him when he disembarked from the bus during its layover at the Greyhound terminal." Brief for appellant at 9.

Thus, the State argues, the squeezing of the backpack was not a search, because Lancelotti had no legitimate expectation of privacy in the exterior of his backpack.

The test used to determine if a defendant has an interest protected by the Fourth Amendment is whether the defendant has a legitimate expectation of privacy in the invaded space. See, *State v. Merrill*, 252 Neb. 510, 563 N.W.2d 340 (1997); *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996). A subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as reasonable. *State v. Merrill, supra.*

> The Supreme Court has "affirmed that a person possesses a privacy interest in the *contents* of personal luggage that is protected by the Fourth Amendment." *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983) . . . . However, "it is generally recognized that the privacy interest of people who are in transit [i.e. on a bus, train, or airplane] on 'public thoroughfares [is] substantially less than those that attach to a fixed dwelling.'" [Citations omitted.] Moreover, "[w]hat one knowingly *exposes* to the public . . . is not a subject of Fourth Amendment protection." *California v. Greenwood,* 486 U.S. 35, 41, 108 S.Ct. 1625, 1629, 100 L.Ed.2d 30 (1988) . . . .

*U.S. v. McDonald*, 100 F.3d 1320, 1324-25 (7th Cir. 1996).

In order to resolve this case, it is first necessary to determine whether Lancelotti had an expectation of privacy in the exterior of his backpack that society is prepared to recognize as reasonable. This issue is one of first impression in Nebraska. Other courts that have dealt with this issue have uniformly agreed that an officer's touching of a bag's exterior does not necessarily constitute a search. See *U.S. v. Nicholson, supra.* However, the federal courts have reached varying results as to the degree of touch that is permissible.

In *U.S. v. Bond,* 167 F.3d 225 (5th Cir. 1999), a Greyhound bus was stopped at a permanent Border Patrol checkpoint in Texas. An agent boarded the bus and checked the immigration

status of the passengers. After completing this check, the agent began walking back toward the front of the bus, squeezing and feeling passengers' luggage in the overhead compartment as he went. The agent felt one bag and noticed that it contained a "'brick-like'" object. *Id.* at 226. Steven DeWayne Bond, the defendant, admitted the bag was his and then consented to its search. The agent discovered a "'brick'" of methamphetamine inside the bag. *Id.* Bond's motion to suppress this evidence was denied, and he was convicted of conspiracy to possess and possession with intent to distribute methamphetamine.

In affirming the district court's denial of Bond's motion to suppress, the Fifth Circuit Court of Appeals stated:

> The bin was a common area of the bus, and it was foreseeable that [Bond's] bag would be squeezed, moved, and manipulated by others. On common carriers, passengers often handle and manipulate other passengers' luggage while stowing or retrieving their own luggage. By placing his bag in the overhead bin, Bond knowingly exposed it to the public and, therefore, did not have a reasonable expectation [of privacy].

*Id.* at 226-27. See, also, *U.S. v. Guzman*, 75 F.3d 1090 (6th Cir. 1996) (officer placed his hand on bag and felt several hard bricks; court held that defendant did not have reasonable expectation of privacy in exterior of or airspace surrounding luggage); *U.S. v. McDonald, supra* (holding defendant did not have reasonable expectation of privacy that exterior of her luggage left on overhead rack of bus would not be felt, handled, or manipulated by others and suggesting that any manipulation of bag is permissible as long as bag is not removed from overhead rack or opened); *U.S. v. Gault*, 92 F.3d 990 (10th Cir. 1996) (holding that officer's kicking and lifting of gym bag located on floor in front of train seat, and protruding into aisle, did not constitute search); *U.S. v. Lovell*, 849 F.2d 910 (5th Cir. 1988) (holding that squeezing luggage taken off baggage conveyor belt at airport was not search but suggesting that officers' right to manipulate bags is not unlimited); *United States v. Viera*, 644 F.2d 509 (5th Cir. 1981) (holding that light press of hands along exterior of bag to circulate air in preparation for dog sniff (prepping) was not search within meaning of Fourth Amendment). See, also,

*U.S. v. Washington*, 146 F.3d 536 (8th Cir. 1998) (suggesting that officers do not have unlimited right to touch exterior of bags).

The Tenth Circuit has taken a more cautious approach to this issue, concluding, as the Eighth Circuit suggested in *U.S. v. Washington, supra*, that there are limits as to what society will tolerate as reasonable. *U.S. v. Nicholson*, 144 F.3d 632 (10th Cir. 1998). There, a Greyhound bus made a regularly scheduled stop in Oklahoma City, Oklahoma. After the passengers disembarked, Detectives Tina Arragon and Bo Leach began checking the bags left in the overhead compartments of the bus. Leach removed bags from the overhead compartments, manipulated them, and smelled them. In checking one black carry-on bag, Leach felt hard " 'tightly-wrapped bundles,' " which he believed to be illegal drugs. *Id.* at 635.

Meanwhile, Detectives Mark Wenthold and Miguel Ramos were checking bags in the cargo hold of the bus. Wenthold spotted a black, padlocked suitcase and "felt the sides of the bag with his palms perpendicular to the ground and flat." *Id.* at 634. Wenthold detected several large bundles in this bag. Wenthold then smelled the bag and detected a strong odor of marijuana.

The passengers were then allowed to return to the bus. The defendant, Eugene Nicholson, Jr., sat directly beneath the black carry-on bag. When questioned whether he had any carry-on luggage, Nicholson responded that he did not. Leach held up the black carry-on bag and inquired whether anyone on the bus owned the bag. No one claimed it. Wenthold next brought the black suitcase from the cargo hold and made the same inquiry. Again, no one responded. The detectives removed the bags from the bus and inspected their contents. The detectives found cocaine and marijuana inside the bags. Nicholson was subsequently arrested.

Relying on *U.S. v. McDonald*, 100 F.3d 1320 (7th Cir. 1996), the district court found that Nicholson had no reasonable expectation of privacy in the exterior of his bag stored in the overhead compartment of the bus. The district court also concluded that the handling of the baggage in the cargo hold was not a search.

The Tenth Circuit first addressed whether the handling of a defendant's carry-on luggage was a search prohibited by the

Fourth Amendment. The court observed that Webster's Third New International Dictionary 1376 (1981) defines manipulate as "'to treat, work, or operate with the hands.'" 144 F.3d at 639. The court distinguished the facts from those found in *McDonald*, noting that Leach was not prepping the bag for a sniff as the officers had in *McDonald*; rather, "Leach worked [Nicholson's] bag to determine whether it contained something of independent evidentiary value." 144 F.3d at 639. The court concluded that when Leach removed Nicholson's carry-on bag from the overhead compartment and conducted a "'tactile examination . . . aimed at discovering the nature of the contents of the bag,'" he went beyond the type of touch that a person could reasonably expect from another passenger. *Id.* The court thus concluded that Leach's actions were a search within the meaning of the Fourth Amendment.

The *Nicholson* court next addressed whether the handling of the bag from the cargo hold constituted a search. The court emphasized that Wenthold acknowledged that by pressing on the sides of the suitcase, he was inspecting the contents of the suitcase. The court stated that by checking his suitcase with the busline, Nicholson could reasonably expect that his luggage might be lifted by the handle, or even tossed, but determined that by squeezing the sides of the suitcase, the detectives went "beyond that type of contact which a passenger may reasonably expect when checking a bag with a commercial bus line." *U.S. v. Nicholson*, 144 F.3d 632, 640 (10th Cir. 1998).

The *Nicholson* court stressed that the facts were distinguishable from *U.S. v. Lovell*, 849 F.2d 910 (5th Cir. 1988), and *United States v. Viera*, 644 F.2d 509 (5th Cir. 1981), because in those cases, the officers gently pressed the sides of the bags in order to circulate air in preparation for a sniff, human or dog. The court emphasized that Wenthold did not testify that he was pressing the bag in order to smell the air expelled from it and that there was no dog present at the scene. Wenthold's sole purpose for pressing on the sides of the bag was to inspect its contents. The court observed: "This case presents yet another variation on the line-drawing that has become commonplace when we address the contours of Fourth Amendment rights. . . . 'An apparently small difference in the factual situation frequently is

viewed as a controlling difference in determining Fourth Amendment rights.'" 144 F.3d at 640.

In the present case, the district court found the reasoning in *U.S. v. Nicholson, supra*, persuasive and concluded that Lutter's handling of Lancelotti's bag was a search within the meaning of the Fourth Amendment.

■ While I agree with the *Nicholson* court's premise that the degree of intrusion naturally determines the reasonableness of any search, I disagree with the district court's application of that case to the facts in this one. As the court in *Nicholson* acknowledged, passengers who place their luggage in the overhead public storage on a commercial carrier can reasonably expect that other passengers will touch, move, or adjust the luggage in order to retrieve or make room for their own luggage. The nature and quality of the intrusion on the individual's Fourth Amendment interests must be balanced against the importance of the governmental interests alleged to justify the intrusion. See *United States v. Place*, 462 U.S. 696, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983). I do not believe, applying the foregoing principles, that Lutter's handling of Lancelotti's backpack went beyond that which Lancelotti might reasonably expect when leaving his backpack unattended in the overhead storage area of a common carrier or that it constituted an unreasonable governmental intrusion.

Lutter testified that he "place[d] a hand on either side of the bag and squeeze[d] the bag, causing an air exchange so that [he could] smell the air from the bag or around the bag." This same type of contact could be expected from a passenger grabbing Lancelotti's backpack to move it aside to make room for his own bag. See, *U.S. v. Bond*, 167 F.3d 225 (5th Cir. 1999); *U.S. v. Nicholson, supra*; *U.S. v. McDonald*, 100 F.3d 1320 (7th Cir. 1996). Unlike *Nicholson*, there was no evidence that Lutter removed the backpack from the overhead storage area or manipulated the backpack to the degree described in *Nicholson*. Moreover, the stated intent of Lutter in "poofing" the backpack was to cause an air exchange for sniffing purposes only, not to tactually determine its contents.

For the foregoing reasons, I find that Lancelotti had no reasonable expectation that his backpack would not be touched in this manner and that the minimal intrusion involved here did not

constitute an illegal search. The order of the district court sustaining Lancelotti's motion to suppress is reversed, and the cause is remanded with directions to overrule the motion to supress and to further proceed.

REVERSED AND REMANDED.