United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 8, 2003**

Charles R. Fulbruge III
Clerk

Revised May 9, 2003

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 02-50556

UNITED STATES OF AMERICA,

                                                        Plaintiff-Appellee,

versus

CLIFF RONDALE ELLIS,
a/k/a Stanley Jamal Kinard,

                                                        Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before SMITH, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

The controlling issue in this case is whether, after Border Patrol agents have completed a programmatic immigration check of bus passengers, those agents may continue to detain the passengers, absent individualized suspicion, to look for drugs. Because we have previously held that this type of continued detention violates the Fourth Amendment, *see  United States v. Portillo-Aguirre*, 311 F.3d 647 (5th Cir. 2002), we reverse.

1

# I. FACTS AND PROCEEDINGS

On December 14, 1998 a Greyhound bus entered the Sierra Blanca checkpoint and was stopped for an immigration check of passengers. Border Patrol Agent Manuel Marquez boarded the bus and inquired as to every passenger's citizenship as he moved to the back of the bus. By the time he reached the back of the bus, Marquez had assured himself that all passengers on board were legally in the United States.

Marquez then began to return to the front of the bus, searching the carry-on luggage in the upper bins using the "squeeze and sniff" method that he had been taught as part of his Border Patrol training. Marquez would remove a piece of luggage from the overhead bin, squeeze it "all the way around" to check for soft spots, and sometimes smell it. At some point in this process, Marquez felt a "brick-like hard item" in a black travel bag, which he believed could be narcotics. It is unclear from the record how many bags had already been searched at this point, or how much time had elapsed.

Marquez asked passengers on the bus to whom the bag belonged, but no one claimed the bag. He then removed the bag from the bus, and a drug-sniffing dog alerted to it. Marquez then re-boarded the bus and continued his check of the overhead luggage bin. Eventually he discovered two more brick-like items and arrested the appellant, Cliff Ellis.

On January 7, 1999 Ellis was indicted for violation of 8 U.S.C. § 841(a)(1) for possession of marijuana with intent to distribute. Prior to trial Ellis moved to suppress the evidence obtained during the bus search on grounds that (among others): (1) the immigration inspection exceeded its permissible duration; (2) the search of his luggage was unreasonable. The motion to suppress was denied on March 3, 1999, and Ellis was convicted that same day. Ellis then timely appealed. As the appeal was pending we remanded the case to the district court to reconsider its ruling on the motion

2

to suppress in light of the Supreme Court's decision in *Bond v. United States*, 529 U.S. 334 (2000) (*Bond II*), which, in a reversal of this Court, *see United States v. Bond*, 167 F.3d 225 (5th Cir. 1999) (*Bond I*), held that suspicionless baggage manipulation at immigration checkpoints violates the Fourth Amendment.

On remand, the district court again denied Ellis' motion to suppress. The district court rejected Ellis' argument that the detention had been illegally extended after the immigration purpose for the stop had been completed. The court concluded that, because reasonable suspicion of drug activity arose only after a trivial delay, the stop did not exceed its permissible duration. The district court acknowledged that, under *Bond II*, the "squeeze and sniff" inspection was itself an illegal search, but decided the evidence was properly admitted under the good faith exception to the exclusionary rule.

## II. STANDARD OF REVIEW

When reviewing the denial of a motion to suppress, we review questions of law *de novo* and the district court's factual findings for clear error. *Portillo-Aguirre*, 311 F.3d at 651-52. In our review we must view the evidence in the light most favorable to the government, as the party that prevailed below. *United States v. Runyan*, 290 F.3d 223, 234 (5th Cir. 2002). It is Ellis' burden to prove a Fourth Amendment violation, but once he does so, the burden shifts to the government to demonstrate why evidence obtained in an illegal search or seizure should not be excluded. *Id*.

## III. DISCUSSION

Ellis first argues that the drug evidence against him was the fruit of an illegally extended seizure. While he does not challenge the legality of the initial immigration stop, Ellis argues that the agent violated his Fourth Amendment rights by extending the detention to conduct a search for drugs, after the lawful immigration purpose of the stop had terminated. Ellis cites *United States v. Machuca-*

*Barrera*, 261 F.3d 425 (5th Cir. 2001), and *Portillo-Aguirre* in support of this argument. The government responds that, because Marquez was squeezing and sniffing the luggage "contemporaneously with his exit from the bus," the immigration purpose of the stop had not been completed yet. In other words, since Marquez would necessarily have to exit the bus, the government argues that the squeezing and sniffing did not extend the stop.

We agree with Ellis that this case falls squarely under the holdings of *Machuca-Barrera* and *Portillo-Aguirre*.

In *Machuca-Barrera,* an immigration check of two teenagers at a permanent checkpoint eventually revealed drugs in their car. 261 F.3d at 429-30. In the process of verifying the immigration status of the teenagers, a Border Patrol agent had asked them whether they were carrying any drugs. *Id*. at 430. We rejected Machuca-Barrera's argument that, because the drug question was not based on reasonable suspicion, it violated the Fourth Amendment. *Id*. at 431-35.

*Machuca-Barrera* represented our first chance to discuss the interplay of *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976), which upheld suspicionless immigration checkpoints, and *City of Indianapolis v. Edmond*, 531 U.S. 32 (2000), which held unconstitutional suspicionless checkpoints for the primary purpose of drug interdiction. With *Edmond* and *Martinez-Fuerte* as starting points, we delineated the bounds of immigration stops by applying our long-standing jurisprudence regarding stops based on reasonable suspicion—so-called *Terry*[1] stops—to programmatic immigration stops. *Id*. at 432-33.[2]

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

[2] The Court cited *United States v. Jones*, 234 F.3d 234, 241 (5th Cir. 2000), *United States v. Dortch*, 199 F.3d 193, 198 (5th Cir. 1999) *revised on other grounds on denial of rehearing*, 203 F.3d 883 (5th Cir. 2000), and *United States v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993).

In a *Terry* stop, "[o]nce the purpose justifying the stop has been served, the detained person must be free to leave." *Id*. Likewise, we held in *Machuca-Barrera* that the "scope of an immigration checkpoint stop is limited to the justifying, programmatic purpose of the stop: determining the citizenship status of persons passing through the checkpoint." *Id*. at 433. Emphasizing that judges "are ill-equipped" to "measure[] the pertinence of questions to the immigration purpose," the Court re-stated its "practical" and "workable" rule: "a stop may not exceed its permissible duration unless an officer has reasonable suspicion." *Id*. at 434; *see also id*. ("[A]n agent at an immigration stop may investigate non-immigration matters beyond the permissible length of the immigration stop if and only if the initial lawful stop creates reasonable suspicion warranting further investigation.").

We applied *Machuca-Barrera* to the context of buses stopped at immigration checkpoints in *Portillo-Aguirre*. There, a Border Patrol agent had completed his immigration check, and, in the walk from the back of the bus toward the exit at front, the agent stopped to question Portillo-Aguirre about drugs, thereby extending the bus' detention three minutes. 311 F.3d at 650-51, 656. In holding the extended detention unreasonable, we reiterated the rule from *Machuca-Barrera* that, once an agent has completed his immigration inquiry at an immigration checkpoint, he must end his seizure of the bus unless he has reasonable suspicion of criminal wrongdoing. *Id*. at 655 (citing *Machuca Barrera*, 261 F.3d at 434). Again, the court drew parallels to our *Terry* stop jurisprudence in which even the most brief extended detentions were found unconstitutional: "when officers detain travelers after the legitimate justification for a stop has ended, the continued detention is unreasonable." *Id*. at 654.

*Portillo-Aguirre* observed that to decide otherwise would undermine the Supreme Court's

5

holding in *Edmond* that checkpoints for the primary purpose of drug interdiction are unconstitutional. 311 F.3d at 655. Although the primary purpose of that stop was immigration, allowing the Border Patrol to routinely tack on otherwise impermissible drug interdiction questioning was "essentially an attempt to circumvent the Court's holding in *Edmond* . . . ." *Id*. *Portillo-Aguirre* then re-stated its holding in terms that could hardly be more applicable to this case: "when the purpose of a stop switches from enforcement of immigration laws to drug interdiction, a Fourth Amendment violation occurs unless the Border Patrol agent has individualized suspicion of wrongdoing." *Id*.

Here, there is no dispute that agent Marquez was "squeezing and sniffing" the passengers' bags for drugs, without individualized suspicion, after having completed the immigration check. Accordingly, the rule of *Portillo-Aguirre* mandates reversal.

To be sure, we emphasize that if a Border Patrol agent develops reasonable suspicion in the course of actually exiting the bus, that agent may extend the detention. *See Portillo-Aguirre*, 311 F.3d at 656. Here, agent Marquez was squeezing and sniffing the passengers' baggage, not merely exiting the bus. The delay to manipulate the baggage impermissibly extended the seizure because it was not supported by reasonable suspicion. *Id*.

The government cites a portion of *Bond I* in urging that we nevertheless affirm. On similar facts to this case, *Bond I* held that the search was not an unlawfully extended detention because there was no evidence the inspection "delayed the bus' departure more than an additional one or two minutes." 167 F.3d at 227-28. That panel held that "the trivial delay . . . did not violate the strict limits of a border checkpoint stop." *Id*. at 228. Of course, the Supreme Court overruled *Bond I* on the grounds that squeezing Bond's luggage without reasonable suspicion was unconstitutional. *Bond II*, 529 U.S. at 338-39. After *Bond II*, the squeezing and sniffing methodology took on constitutional significance,

6

immediately calling into question the previous conclusion that the delay was trivial. That is, *Bond I*'s erroneous conclusion that the squeezing method was not a search appears to have influenced its decision that the delay caused by that search was trivial.

In any event, assuming that *Bond I*'s "trivial delay" rule may be set apart from the rest of the opinion to survive *Bond II*, our discussion in *Machuca-Barrera* demonstrates that the "trivial delay" rule does not survive the Supreme Court's decision in *Edmond*, at least insofar as it would apply to suspicionless drug interdiction. *Machuca-Barrera*, in harmonizing *Edmond* and *Martinez-Fuerte*, made plain the bounds of suspicionless immigration stops and laid the foundation for *Portillo-Aguirre*. To the extent that the government's position is inconsistent with *Machuca-Barrera* and *Portillo-Aguirre*, we conclude it is also inconsistent with *Edmond*, and should no longer be followed. *Ruiz v. Estelle*, 666 F.2d 854, 857 n.5 (5th Cir. 1982).

Finally, the government appears to argue that the good-faith exception to the exclusionary rule applies to the extended detention. *See United States v. Jackson*, 849 F.2d 854, 865-66 (5th Cir. 1987) (en banc). This argument is meritless because *Bond I* had not been decided at the time of the search, nor could we find any case supporting a suspicionless extended detention at an immigration checkpoint.

## IV. CONCLUSION

For the stated reasons, we REVERSE.

7